UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:
CAPITOL INVESTMENTS USA, INC.
and NEVIN KAREY SHAPIRO,

      Debtors.                   /

JOEL L. TABAS, TRUSTEE,

      Plaintiff,

v.

ROBERT J. KALLMAN, BEARS
INVESTMENT COMPANY, a New York
general partnership, JANE DOE, partner
of Bears Investment Company, and JOHN
DOE, partner of Bears Investment
Company,

      Defendants.

                       /

CASE NO.: 09-36408-BKC-LMI
(Substantively Consolidated)[1]
Case No. 09-36418-BKC-LMI
(Jointly Administered under
Case No. 09-36408-BKC-LMI)

Chapter 7

Adv. Case No.:

## **COMPLAINT**

Joel L. Tabas, as Chapter 7 Trustee for the bankruptcy estate of Capitol

Investments USA, Inc., through undersigned counsel, sues Robert J. Kallman, Bears

Investment Company, a New York general partnership, Jane Doe, partner of Bears

Investment Company, and John Doe, partner of Bears Investment Company, and alleges:

## I. **SUBJECT MATTER JURISDICTION AND VENUE**

1.      This is an adversary proceeding under Fed. R. Bank. P. 7001, *et seq.*

2.      This Court has jurisdiction of the subject matter of this proceeding pursuant to

28 U.S.C. §§ 157(b) and 1334 and the Order of Reference of the United States District

Court for the Southern District of Florida, Administrative Order 2012-25.

---

[1] The last four digits of the taxpayer identification number for each consolidated Debtor follow in
parentheses: Ocean Rock Enterprises, Inc. (3272), JAT Wholesale, Inc. (7903), and Pink Panther
Enterprises, LLC (5240).

3.      This is a core proceeding as that term is defined in 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

4.      Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

## II. <u>PARTIES AND PERSONAL JURISDICTION</u>

5.      Joel L. Tabas ("Trustee" or "Plaintiff") is the duly appointed Chapter 7 Trustee for the bankruptcy estate of Capitol Investments USA, Inc. and brings this action solely in that capacity.

6.      Debtor, Capitol Investments USA, Inc. ("Capitol") is a corporation organized under the laws of the State of Florida, which had its principal place of business at 400 41st Street, Suite 506, Miami Beach, Florida 33140.

7.      Debtor, Nevin Karey Shapiro ("Shapiro") was at all material times the sole shareholder and owner of Capitol.

8.      Defendant, Robert J. Kallman ("Kallman") is a resident of the State of New York.  Kallman also owns a condominium located in Miami-Dade County (the "Miami Condo").  Upon information and belief, Kallman regularly conducts business in the State of Florida and frequently spends time in the Southern District of Florida.

9.      Defendant, Bears Investment Company ("Bears") is a New York general partnership with its principal place of business at 45 Rodeo Drive, Syosset, New York 11791.  Kallman was a partner of the Bears Partnership. On February 11, 2002, Bears entered into a Financial and Consulting Services Agreement (the "LOC Agreement") with Capitol. A true and correct copy of the LOC Agreement is attached hereto as Exhibit "A." The LOC Agreement was entered into between Bears and Capitol at a time when Capitol was operating as a legitimate food diversion business within the Southern District of Florida.

In accordance with Paragraph 15 of the LOC Agreement, the LOC Agreement is to be "construed, interpreted and enforced in accordance with, and governed by, the laws of the State of Florida . . . [and] venue shall reside in Miami-Dade County, Florida." Upon information and belief, Bears conducted business from the Miami Condo and used Kallman's home addresses in New York, New Jersey and the Miami Condo as its principal place of business. On October 16, 2006, Bears, Kallman, Capitol and Shapiro entered into a Settlement Agreement and Release (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "B." This action arises out of the lending relationship between Bears/Kallman and Capitol and the Settlement Agreement. In accordance with Paragraph Q of the Settlement Agreement venue is proper in Miami-Dade County, Florida "in any action or proceeding arising out of or relating to the Settlement Agreement, and Capitol and Shapiro . . . irrevocably agree that all claims in respect of any such action must be brought and/or defended in such court . . ." In addition, Paragraph Q of the Settlement Agreement specifies that jurisdiction is proper in the Southern District of Florida and that Kallman and Bears unconditionally and irrevocably waived their right to a jury trial in any suit, action or proceeding arising under the Settlement Agreement.

10.     Defendant, Jane Doe, partner of the Bears Partnership, is an individual who, upon information and belief, is residing in New York or New Jersey.

11.     Defendant, John Doe, partner of the Bears Partnership, is an individual who, upon information and belief, is residing in New York or New Jersey.

12.     BBK Wholesale, LLC ("BBK") is a Delaware limited liability company that was registered to conduct business in the State of Florida, with its principal place of business

located at 400 41st Street, Suite 506, Miami Beach, FL 33140 – the same address as

Capitol.  Prior to BBK being administratively dissolved on October 1, 2004 for failing to file

its annual report, Kallman and his wife Dawn Kallman ("Dawn") were BBK's co-managers.

### III.  GENERAL ALLEGATIONS

**A.      Bankruptcy Proceedings**

13.      On November 30, 2009, involuntary Chapter 7 bankruptcy petitions were filed

with this Court against Capitol and Shapiro (the "Petition Date").

14.      On December 11, 2009, Joel L. Tabas was appointed as interim Chapter 7

Trustee of both the Capitol and Shapiro bankruptcy cases [Case No. 09-36408, ECF 14;

Case No. 09-36418, ECF 12].

15.      On December 12, 2009, this Court entered orders providing for the Capitol

and Shapiro bankruptcy cases to be jointly administered [Case No. 09-36408, ECF 17;

Case No. 09-36418, ECF 16].

16.      On December 30, 2009, this Court entered its Order for Relief in Involuntary

Case and Setting Deadline for Filing Schedules, Statement of Financial Affairs and Other

Documents in each of the Capitol and Shapiro bankruptcy cases [Case No. 09-36408, ECF

35; Case No. 09-36418, ECF 24].

17.      On April 22, 2010, Joel L. Tabas was appointed as Chapter 7 trustee of the

jointly administered Capitol and Shapiro bankruptcy cases [Case No. 09-36408, ECF 333;

Case No. 09-36418; ECF 24].

Case No. 09-36408-BKC-LMI
Adv. No. _____

**B.      Capitol's Business**

18.      Prior to the Petition Date, Capitol represented itself to be engaged in the wholesale grocery distribution business; and through Shapiro, Capitol raised hundreds of millions of dollars from lenders (the "Lenders") to fund its purported business operations.

19.      Craig Currie ("Currie") purportedly operated a business that sold and re-sold "diverted" or "grey market" goods and products – typically grocery items – called CraigCo, Inc. ("CraigCo").  To operate CraigCo, Currie would obtain short term financing, purchase goods and then sell them to a customer at a profit.

20.      Prior to 2002, Capitol's business plan was changed so that it not only bought and sold goods but also started financing CraigCo's purchases of goods and received a percentage of CraigCo's profits.

21.      Prior to November 2005, Capitol ceased conducting any of its own wholesale grocery purchases or sales and instead began solely using the Lenders' funds to provide CraigCo with short term financing to fund its purchases and sales of goods. Pursuant to Shapiro's agreement with Currie, Capitol was supposed to receive 12% of the profits from CraigCo.

**C.      Kallman's Lending Relationship With Capitol**

Kallman's Close Friendship with Shapiro

22.      Kallman was introduced to Shapiro (who Kallman refers to as "Nevy") in early 2000 and the two quickly became friends and Kallman would frequently visit Shapiro to live his rock-star life-style partying with him on South Beach.  Shapiro would treat Kallman to extravagant dinners at Prime 112, would take Kallman partying out on his yacht with well-known football players and athletes and would pay for other entertainment for Kallman.

5

<u>Inception of Kallman's Lending Relationship With Capitol</u>

23.    Bears was formed by Kallman to do investments outside the normal course of Kallman's every day family business of Bookazine Co. Inc. ("Bookazine") – a wholesale book distributor – for which Kallman is the President and CEO.

24.    Kallman – with the help of Bookazine's CFO, Larry Usdin – maintained Bear's books and records.

25.    In February 2002, when Capitol was operating as a legitimate food diversion business, Bears entered into the LOC Agreement with Capitol whereby Bears was to provide Capitol with a $1 million line of credit to purchase goods. Kallman executed the LOC Agreement on behalf of Bears. The LOC Agreement provided the following requirements:

(a)    Bears would provide funding to Capitol based upon verifiable purchase orders ("PO") for goods (setting forth the description and quantity of the goods, the sales price of the goods, the purchaser of the goods, the address for delivery of the goods, the expected delivery date, a telephone number and contact name for the purchaser of such goods) being provided and approved by Bears;

(b)    once the purchase order is approved by Bears, Capitol was to provide Bears an invoice ("Invoice") for the purchase of such goods to fulfill the approved PO;

(c)    once Bears received the PO and Invoice, Bears would fund 100% of the amount in the Invoice in one business day, <u>but in no event was Bears to fund more than the $1 million</u>;

(d)    promptly after Bears advanced the funds set forth in the Invoice, Capitol was to provide Bears satisfactory proof of payment of the Invoice;

(e)    the approved POs that Bears was financing were to be made in the name of Capitol with instructions to make payment to a lock-box designated by Bears and under the exclusive control of Bears (the "Lock-Box"), and any payment Capitol received for an approved PO

6

would immediately be forwarded to Bears for payment pursuant to the LOC Agreement;

(f)     Bears was to maintain an accounting of the Lock-Box;

(g)     Bears would distribute the funds in the Lock-Box by wire transfer as follows: first to the payment of the principal amount of Bears funding under the LOC Agreement, second to Bears 25% interest due under the LOC Agreement, third to all consulting fees due and owing to Bears (the "Consulting Fees") and fourth to Capitol;

(h)     Capitol was to maintain insurance in the full amount of the cost of any goods shipped to Capitol and Bears was to be named loss payee; and

(i)     Bears had the right to inspect Capitol's books and records as they pertain to Bears and it's funding under the LOC Agreement.

(collectively, the "LOC Requirements").

26.     The LOC Agreement would automatically renew every two years unless Bears gave Capitol 30 days notice of termination.

27.     The purported purpose of the LOC Requirements were to give Kallman control over Bears's lending relationship to Capitol – but rather than seeking compliance with the LOC Requirements, as would any prudent business person in Kallman's position, the LOC Requirements were used instead to provide cover for Kallman's illegal lending relationship with Capitol as (i) there was never a Lock-Box, (ii) Capitol only provided "Requests for Funding" to Bears (not Invoices or POs) for a limited period of time and thereafter ceased providing Bears any documentation for its purchases, (iii) Bears never provided any consulting to Capitol and the purported Consulting Fees were simply added to the agreement to circumvent the usurious rates Kallman negotiated with Capitol (between 36% - 272% per annum), (iv) Bears never had any interest in reviewing Capitol's books and records (and never did), (v) Capitol never insured the products it was purportedly

purchasing and (vi) Bears exceeded the purported $1 million limit and extended it to $2 million without any amendment to the LOC Agreement.

28.     Furthermore, Bears was at all times aware that it was not in fact funding Capitol's purchases but rather Bears was providing funding to Capitol to make loans to CraigCo as the "Requests for Funding" provided to Kallman by Capitol in February 2002 reflected "Craigco, Inc. c/o Capitol Investments USA, Inc."  True and correct copies of the Requests for Funding produced to the Trustee by Kallman are attached hereto as Composite Exhibit "C."

29.     All of the funds Bears lent to Capitol came from either Kallman's personal funds or his personal lines of credit.

30.     Concurrently with the execution and delivery of the LOC Agreement, Capitol and Bears entered into a Non-Circumvention and Non-Disclosure Agreement (the "NCND Agreement") whereby Bears agreed that it would not interfere with or utilize any business relationships of Capitol for its own benefit.  A true and correct copy of the NCND Agreement is attached hereto as Exhibit "D."[2] The NCND Agreement provided for liquidated damages for any breach by Bears in the amount of $500,000.

Kallman Uses Capitol to Hide His Illicit Affairs

31.     Starting in October 2002, Kallman derived a plan to use his business dealings with Capitol to evade taxes and to hide his extramarital affair.

32.     Kallman would wire transfer the principal amount of a loan to Capitol plus an additional $3,000.00 over the amount of the stated invoice.

_____

[2] The NCND Agreement attached as Exhibit D was produced by Bears pursuant to the Trustee's subpoena and is unexecuted.  However, it is identical to the form in Capitol's records and neither Bears nor Kallman dispute that it was executed.

8

33.     Kallman would have Capitol then send a receipt to BBK reflecting that the $3,000.00 was for monthly rent that BBK was paying to Capitol (which is why BBK's principal place of business was the same as Capitol's); but Capitol never leased space to BBK (the "Fictitious Rents").  A true and correct copy of a Fictitious Rents receipt is attached hereto as Exhibit "E."

34.     Roberto Torres ("Torres") – Capitol's CFO – would then withdraw the $3,000.00 in cash (either in cash from Capitol's bank account or by writing a check to himself and then withdrawing the cash from his personal bank account) and send it from Florida to Kallman via Federal Express at Bookazine's business address in New Jersey.

35.     In addition to the Ficitious Rents, Capitol – at Kallman's request – paid $25,000.00 to an interior decorator for an apartment in New York City.

36.     In the four year period preceding the Petition Date, Capitol paid $18,000.00 to Kallman for the Fictitious Rent Scheme as set forth on Exhibit "F."

37.     Capitol's records reflected that the Fictitious Rents to Kallman and BBK were actually for rent Capitol was paying to BBK – but Capitol never rented space from Kallman or BBK either.

<u>Kallman Circumvents Capitol to Usurp its Business Opportunities</u>

38.      Beginning in January 2004, Kallman decided to circumvent Capitol and directly contacted Currie to make loans to CraigCo thereby cutting out Capitol's profit participation in the Capitol-CraigCo deals – a clear violation of the NCND Agreement.

39.     Between January 12, 2004 and April 18, 2006, Kallman funded approximately $19,396,800 to CraigCo directly for CraigCo's purchases of goods.

Tabas, Freedman, Soloff, Miller & Brown, P.A. · One Flagler Building, 14 Northeast First Avenue, Penthouse, Miami, Florida 33132 · (305) 375-8171

40.     In 2006, Shapiro discovered that Bears was in breach of the NCND Agreement due to Kallman's providing funding to CraigCo and prohibited Capitol from making any further payments to Bears pursuant to the LOC Agreement.

41.     As of October 2006, Capitol purportedly owed $2 million in principal to Bears pursuant to the LOC Agreement.

42.     From November 30, 2005 through October 24, 2006, Kallman, through Bears, received the total of $4,518,666.69 from Capitol in principal and interest payments (the "Four-Year Loan Transfers") as set forth on Exhibit "G" attached hereto.

43.     From November 30, 2005 through September 18, 2006, Kallman fraudulently used Bears for the improper purpose of making criminally usurious loans to Capitol pursuant to the LOC Agreement.  Kallman would negotiate the criminally usurious interest rates with Shapiro and then personally fund Bears so that Bears could make the criminally usurious loans to Capitol.

44.     Within four years prior to the Petition Date, Bears received the total of $3,468,666.69 from Capitol in principal and interest payments (the "Bears Usurious Loan Transfers") on the loans with interest rates that ranged from 36% to 272% (the "Bears Usurious Loans") – criminally usurious under Florida law.[3]   A schedule of the Bears Usurious Loan Transfers is attached hereto as Exhibit "H" and a schedule reflecting the terms of the Bears Usurious Loans is attached hereto as Exhibit "I."

---

[3] Florida's "criminal usury" statute makes it a crime **for any person to make or give "an extension of credit** ... and **knowingly** charge, take or **receive interest thereon a rate exceeding 25 percent per annum** . . .".  Fla. Stat. § 687.071(2) (emphasis added).  Charging interest in excess of 45% is a felony under Florida law.  *See* Fla. Stat. § 687.071(3) ("any person making an extension of credit to any person, who shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding 45 percent per annum . . . whether directly or indirectly or conspire so to do, commits a felony of the three degree . . .").

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

Case No. 09-36408-BKC-LMI
Adv. No. _____

<u>Kallman Ends His Relationship with Capitol and Shapiro</u>

45.      On October 20, 2006, Capitol, Shapiro, Bears and Kallman entered into a Settlement Agreement (the "Settlement Agreement") and Release (the "Release") whereby Capitol and Kallman resolved (i) the outstanding amounts owed by Capitol to Bears pursuant to the LOC Agreement and (ii) Bears breach of the NCND Agreement.  A true and correct copy of the Settlement Agreement and Release is attached hereto as Exhibit "J."

46.      The terms of the Settlement Agreement were as follows:

a.      Bears agreed to forgive the principal amount of $950,000 of Capitol's $2 million indebtedness under the LOC Agreement and all accrued interest due in exchange for Capitol's payment of $1,050,000 to Bears on or before November 1, 2006 (the "Settlement Payment");

b.      The LOC Agreement was terminated;

c.      The NCND Agreement was terminated; and

d.      Shapiro guaranteed the Settlement Payment.

47.      The Release provided:

Capitol and Shapiro, individually and collectively, jointly and severally, hereby completely and generally release and forever discharge [Bears] and Kallman, and each of its and his parent, affiliated and subsidiary corporations, companies, partnerships, limited partnerships, joint ventures, and the partners, limited partners, members, managers, shareholders, officers, directors, employees, agents, attorneys, and representatives, and the successors and assigns of each of them (collectively, the "Kallman Entities"), or any of them, of and from any and all past, present and future claims, demands, obligations, actions, causes of action, rights, damages, expenses, fees, attorney's fees, and requests or demands for compensation or payment of any nature whatsoever, whether based on tort, contract, or any other theory of recovery, including negligence and/or fraud, and whether for compensatory, consequential or punitive damages or other relief or remedy, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, whether direct or indirect or third party or derivative, whether fixed or contingent, and

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

whether secured or unsecured, which Capitol and/or Shapiro, and each of its and his parent, affiliated and subsidiary corporations and companies, partnerships, limited partnerships, joint ventures and the partners, limited partners, members, managers, shareholders, officers, directors, employees, agents, attorneys and representatives, and the successors and assigns of each of them (collectively, the "Shapiro Entities',), individually and collectively ever had or now has or will or may have against the Kallman Entities, or any of them, for, upon, or by reason, directly or indirectly, of any matter, cause, or thing whatsoever (excluding breach of this Agreement), arising out of, related to, or in connection with the LOC Agreement, the NCND Agreement, the Security Agreement or the relationship and/or dealings of the parties relating thereto or otherwise at law or in equity, from the date of the beginning of the world to the date hereof, all to the fullest extent allowed by United States federal, state or local law and the national or local law of any foreign country (statutory or decisional).

48.     In addition, Currie and CraigCo assumed a portion of the debt owed by Capitol to Bears and executed a Promissory Note in the amount of $510,000 in favor of Bears as part of the Settlement Agreement (the "Currie Note"), as the funds Capitol received from Bears were transferred to CraigCo with Kallman's knowledge and approval.

49.     Pursuant to the Settlement Agreement, on October 24, 2006, Capitol transferred $1,050,000 (the "Settlement Payment") to Bear's and Kallman's counsel – Loeb & Loeb, LLP – thereby consummating the Settlement Agreement and releasing Capitol's claims against Bears and Kallman for the Bears Usurious Loans.

<u>Kallman Turns Shapiro into Homeland Security and the Department of Justice</u>

50.     After Capitol made the Settlement Payment to Bears, Kallman – unhappy with the Settlement Agreement – was set on destroying Shapiro and went to Currie to garner his assistance in proving that Shapiro had defrauded Kallman despite the Release reflecting that Kallman and Bears had released Capitol and Shapiro from pursuing claims under any "theory of recovery, including negligence and/or fraud." Settlement Agreement, ¶ III.A.(ii).

51.     Kallman even endeavored to have Currie execute an affidavit reflecting that Shapiro and Currie had conspired to steal and defraud Kallman.

52.     But Mr. and Mrs. Currie (the "Curries") had already executed affidavits reflecting that (a) Kallman was harassing the Curries and had threatened legal action against them if the Curries did not agree to assist Kallman and (b) that the Curries had not conspired with Shapiro to steal from and defraud Kallman.  True and correct copies of the Curries executed affidavits are attached hereto as Composite Exhibit "K."

53.     On November 6, 2007, Kallman escalated his allegations and had his counsel contact the U.S. Department of Homeland Security United States Secret Service ("Homeland Security"), providing it with copies of all agreements between Capitol and Bears including, but not limited to, the LOC Agreement, NCND Agreement, Settlement Agreement and Release.

54.     The following day, Bears's counsel forwarded documents filed in the Curries' bankruptcy case (which was filed on October 12, 2007 in the Bankruptcy Court in the District of New Jersey, Case No. 07-24799-MS) and the latest versions of the affidavits that "Mr. and Mrs. Currie had agreed to sign" reflecting that Currie conspired with Shapiro to defraud Kallman to Homeland Security – a complete turnabout from the Curries' prior affidavits.   Upon information and belief, the Curries refused to execute the affidavits prepared by Kallman's counsel.

55.     Kallman continued his quest to nail Shapiro for fraud with the Department of Justice ("DOJ") in June 2008, when his counsel contacted the DOJ to reveal Shapiro's "illegal conduct" and offered Kallman's assistance in the DOJ's investigation.

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

56.     After the Curries filed for bankruptcy, CraigCo was substantively consolidated into their bankruptcy estate as it was adjudicated as Currie's alter ego and CraigCo ceased making any payments due on the $11 million in loans CraigCo owed to Capitol.

**D.     The Collapse of Capitol**

57.     Capitol – not being able to dig itself out of the hole created by CraigCo's failure to pay on its indebtedness to Capitol and having no other source of income – began having problems repaying Lenders in late 2008 and sought further Lenders' funds to stay afloat with its obligations.  The more Capitol fell behind in payments, the more Lenders started imploring Capitol to return the principal on their loans.  Shapiro, knowing that Capitol could not fulfill all of the outstanding obligations to its Lenders, began taking steps to conceal what became the Capitol Ponzi scheme by putting out fires as they arose.

58.     Due to allegations that Shapiro had began dissipating his and Capitol's assets, the petitioning creditors (a collection of Capitol's Lenders), filed the involuntary Chapter 7 bankruptcy petitions against Capitol and Shapiro in November 2009.

59.     Upon motion by the petitioning creditors reflecting that Capitol had over $123 million in liabilities as of December 2008, and only $9 million in speculative assets, the Court swiftly appointed a gap-period interim Trustee, Joel L. Tabas, and the Capitol Scheme was brought to a screeching halt.

60.     On April 20, 2010, the United States Department of Justice (the "DOJ") filed a Criminal Complaint in New Jersey against Shapiro (Case No. 2:10-mj-08082-MCA-1, D.N.J.).  Shapiro has been detained in a federal prison since April 2010.

61.     On September 15, 2010, Shapiro pled guilty to securities fraud and money laundering, admitting that between 2005 and 2009 he had used Capitol to fraudulently

obtain money from investors through a Ponzi-like scheme, whereby Capitol secured a constantly increasing volume of new lender loans to fund the principal and interest payments due on previously secured and then maturing lender loans, and that between August 2007 and November 2007 Capitol had virtually no legitimate income generating business.

**COUNT 1**
**AVOIDANCE OF FRAUDULENT TRANSFER**
**PURSUANT TO 11 U.S.C. § 544(b) AND FLA. STAT. § 726.105(1)(a)**
**(Release Transfer – Bears and Kallman)**

62.    Plaintiff realleges paragraphs 1 through 61 as though fully set forth herein.

63.    Capitol, through the Release, waived its right to assert claims or causes of action in the future against Bears and Kallman.  Accordingly, the Release by Capitol to Bears and Kallman constitutes a transfer of interest in property of Capitol's (the "Release Transfer") that would have been property of the Capitol estate but for the Release Transfer.

64.    As Capitol was admittedly a Ponzi scheme at the time that it entered into the Release, by definition Capitol made the Release Transfer with actual intent to hinder, delay or defraud its other Lenders who are now creditors of Capitol.

65.    As a result of the Release Transfer, Bears and Kallman were released from liability for the Bears Usurious Loan Transfers totaling $3,468,666.69 and the Four-Year Loan Transfers totaling $4,518,666.69.

66.    As is evidenced by Capitol's bankruptcy schedules and the proofs of claims filed in the Capitol case which exceed $111 million, there existed at least one creditor who could have avoided the Release Transfer.

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter 7 Trustee, respectfully requests this Court enter judgment on his behalf and against the Defendants, Bears Investment Company and Robert Kallman, jointly and severally, as follows:

(a)     declaring the Release Transfer to the Defendants, Bears Investment Company and Robert Kallman, jointly and severally, an avoidable transfers pursuant to Section 726.105(1)(a) of the Florida Statutes; and

(b)     granting such other and further relief as may be just and proper.

**COUNT 2**
**RECOVERY OF FRAUDULENT TRANSFER PURSUANT TO**
**FLA. STAT. §726.108 AND FLA. STAT. §726.109 & 11 U.S.C. §§ 544 AND 550**
**(Release Transfer – Bears and Kallman)**

67.     Plaintiff incorporates and realleges paragraphs 1 through 61 and 63 through 66 of this Complaint as though fully set forth herein.

68.     The Release Transfer is avoidable by Plaintiff pursuant to Section 726.105(1)(a) of the Florida Statutes, and as a result, such Release Transfer is recoverable by the Plaintiff pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Sections 544 and 550 of the Bankruptcy Code.

69.     Bears and Kallman were the initial transferees of the Release Transfer.

70.     As a result, Plaintiff may recover the Release Transfer from Defendants, Bears Investment Company and Robert Kallman, pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 544 of the Bankruptcy Code.

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter Trustee, respectfully requests that this Court enter a judgment on his behalf and against Defendants, Bears Investment Company and Robert Kallman, jointly and severally, as follows:

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

Case No. 09-36408-BKC-LMI
Adv. No. _____

(a)      declaring Bears Investment Company and Robert Kallman the initial transferees of the Release Transfer;

(b)      deeming the Release Transfer recoverable pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Sections 544 and 550 of the Bankruptcy Code and thus null and void; and

(c)      granting such other and further relief as this Court deems just and proper.

**COUNT 3**
**AVOIDANCE OF FRAUDULENT TRANSFER**
**PURSUANT TO 11 U.S.C. § 544(b) AND FLA. STAT. § 726.105(1)(b)**
(Release Transfer – Bears and Kallman)

71.      Plaintiff realleges paragraphs 1 through 61 and 63 through 66 as though fully set forth herein.

72.      As set forth in Count 5 of this Complaint, because the Bears Usurious Loans set forth on Exhibit "I" were at all times unenforceable, Capitol and Shapiro had no obligation to make the Bears Usurious Loan Transfers.

73.      In making the Release Transfer, Capitol released claims against Bears and Kallman for (i) cancellation and forfeiture of the Bears Usurious Loan Transfers in the total amount of $3,468,666.69 and (ii) damages for Bears' breach of the NCND Agreement in the amount of $500,000 pursuant to the liquidated damages provision.  Conversely, Bears only released Capitol from $440,000 in liability for payments due by Capitol pursuant to the LOC Agreement ($510,000 was assumed by Currie and CraigCo through the Currie Note). Accordingly, Capitol did not receive reasonably equivalent value in exchange for the Release of Bears and Kallman through the Settlement Agreement.

74.      As Capitol was admittedly operating a Ponzi scheme at the time that it gave the Release Transfer:

17

A.      Capitol was insolvent on the date of the Release Transfer, or became insolvent as a result of the Release Transfer;

B.      Capitol was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Capitol was an unreasonably small capital; or

C.      Capitol intended to incur, or believed that it would incur debts that would be beyond Capitol's ability to pay as such debts matured.

75.      As is evidenced by Capitol's bankruptcy schedules and the proofs of claims filed in the Capitol case which exceed $111 million, there existed at least one creditor who could have avoided the Release Transfer on the Petition Date.

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter 7 Trustee, respectfully requests this Court enter judgment on his behalf and against Defendants, Bears Investment Company and Robert J. Kallman, jointly and severally, as follows:

(a)      determining that the Release Transfer constitutes a fraudulent transfer and is avoidable pursuant to Section 726.105(1)(b) of the Florida Statutes and Section 544(b)(1) of the Bankruptcy Code; and

(b)      granting such other and further relief as this Court deems just and proper.

**COUNT 4**
**RECOVERY OF FRAUDULENT TRANSFER**
**PURSUANT TO FLA. STAT. § 726.108 AND FLA. STAT. § 726.109**
**(Release Transfer)**

76.      Plaintiff incorporates and realleges paragraphs 1 through 61, 63 through 66 and 72 through 75 of this Complaint as though fully set forth herein.

77.      The Release Transfer is avoidable by Plaintiff pursuant to Section 544(b)(1) of the Bankruptcy Code and Section 726.105(1)(b) of the Florida Statutes, and as a result,

the Release is recoverable pursuant to Sections 726.108(1)(c)(3) and 726.109 of the Florida Statutes and Section 550(a)(1) of the Bankruptcy Code.

78.     Kallman and Bears were the initial transferees of the Release Transfer.

79.     As a result, Plaintiff may recover the Release Transfer from Defendants, Bears Investment Company and Robert Kallman, pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 544 of the Bankruptcy Code.

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter Trustee, respectfully requests that this Court enter a judgment on his behalf and against Defendants, Bears Investment Company and Robert Kallman, jointly and severally, as follows:

(a)     declaring Bears Investment Company and Robert Kallman the initial transferees of the Release Transfer;

(b)     deeming the Release Transfer recoverable pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Sections 544 and 550 of the Bankruptcy Code and thus null and void; and

(c)     granting such other and further relief as this Court deems just and proper.

### COUNT 5
### AVOIDANCE OF FRAUDULENT TRANSFERS
### PURSUANT TO 11 U.S.C. § 544(b) AND FLA. STAT. § 726.105(1)(b)
### (Bears Usurious Loan Transfers - Bears)

80.     Plaintiff realleges paragraphs 1 through 61 as though fully set forth herein.

81.     Section 687.071(7) of the Florida Statutes provides that "[n]o extension of credit made in violation of any of the provisions of [Section 687.071(7), Fla. Stat.] shall be an enforceable debt . . . ".

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

82.    Bears made loans to Capitol at rates that were criminally usurious in violation of section 687.071(2), Florida Statutes on the Bears Usurious Loans as reflected in Exhibit "I."

83.    Within the four (4) year period immediately preceding the Petition Date, Capitol made the Bears Usurious Loan Transfers totaling $3,468,666.69 on the Bears Usurious Loans.  The Bears Usurious Loans were funded by Kallman individually.

84.    The Bears Usurious Loan Transfers constitute transfers of interests of Capitol's, and now, the Plaintiff's property.

85.    Because the Bears Usurious Loans were at all times unenforceable, Capitol had no obligation to make any payments of principal or interest on any of the Bears Usurious Loans at any time.

86.    Because Capitol had no obligation to make payments on the Bears Usurious Loans, Capitol did not receive reasonably equivalent value in exchange for any of the interest and principal payments which Capitol made on the Bears Usurious Loans to Bears.

87.    As Capitol was admittedly operating a Ponzi scheme at the time that it made the Bears Usurious Loan Transfers:

A.    Capitol was insolvent on the date that each of the Bears Usurious Loan Transfers was made, or became insolvent as a result of the subject transfer;

B.    Capitol was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Capitol was an unreasonably small capital; or

C.    Capitol intended to incur, or believed that it would incur debts that would be beyond Capitol's ability to pay as such debts matured.

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

88.     As a result of the Bears Usurious Loan Transfers, Bears received the total sum of $3,468,666.69.

89.     As is evidenced by Capitol's bankruptcy schedules and the proofs of claims filed in the Capitol case which exceed $111 million, there existed at least one creditor who could have avoided the Bears Usurious Loan Transfers.

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter 7 Trustee, respectfully requests this Court enter judgment on his behalf and against Defendant, Bears Investment Company, as follows:

(a)     determining that the Bears Usurious Loan Transfers totaling $3,468,666.69 constitute fraudulent transfers and are avoidable pursuant to Section 726.105(1)(b) of the Florida Statutes and Section 544(b)(1) of the Bankruptcy Code; and

(b)     granting such other and further relief as this Court deems just and proper.

**COUNT 6**
**RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO FLA. STAT. § 726.108 AND FLA. STAT. § 726.109**
**(Bears Usurious Loan Transfers - Bears, Kallman, Jane Doe and John Doe)**

90.     Plaintiff incorporates and realleges paragraphs 1 through 61 and 81 through 89 of this Complaint as though fully set forth herein.

91.     The Bears Usurious Loan Transfers are avoidable by Plaintiff pursuant to Section 544(b)(1) of the Bankruptcy Code and Section 726.105(1)(b) of the Florida Statutes, and as a result, the Bears Usurious Loan Transfers are recoverable by Plaintiff pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 550(a)(1) of the Bankruptcy Code.

92.     Bears was the initial transferee of the Bears Usurious Loan Transfers.

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

93.     As Kallman, Jane Doe and John Doe were general partners of Bears, they can be held jointly and severally liable for the Bears Usurious Loan Transfers pursuant to New York Partnership Law § 26.

94.     Alternatively, upon information and belief, Kallman was the subsequent transferee of the Bears Usurious Loan Transfers.

95.     As a result, Plaintiff may recover the value of the Bears Usurious Loan Transfers from both Bears, Kallman, Jane Doe and John Doe pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 550(a)(1) of the Bankruptcy Code.

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter Trustee, respectfully requests that this Court enter a judgment on his behalf and against Defendants, Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe, jointly and severally, as follows:

(a)     declaring Bears Investment Company the initial transferee of the Bears Usurious Loan Transfers;

(b)     awarding damages against Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe, jointly and severally, in the total amount of $3,468,666.69, plus pre-judgment interest in favor of the Trustee and directing Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe to turn over the Bears Usurious Loan Transfers to the Trustee pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 550(a)(1) and 550(a)(2) of the Bankruptcy Code; and

(c)     granting such other and further relief as this Court deems just and proper.

Tabas, Freedman, Soloff, Miller & Brown, P.A. · One Flagler Building, 14 Northeast First Avenue, Penthouse, Miami, Florida 33132 · (305) 375-8171

Case No. 09-36408-BKC-LMI
Adv. No. _____

**COUNT 7**
**ACTION SEEKING CANCELLATION OF ALL SUMS DUE ON USURIOUS**
**LOANS PURSUANT TO FLA. STAT. § 687.071 AND RECOVERY OF ALL PAYMENTS**
**OF PRINCIPAL AND INTEREST ON THE BEARS USURIOUS LOANS AS PROPERTY**
**OF CAPITOL'S BANKRUPTCY ESTATE PURSUANT TO 11 U.S.C. § 542**
**(Forfeited Payments – Bears, Kallman, Jane Doe & John Doe)**

96.     Plaintiff incorporates and realleges paragraphs 1 through 61 of this Complaint as though fully set forth herein.

97.     Bears and Kallman knowingly charged and knowingly collected interest from Capitol on the Bears Usurious Loans at criminally usurious rates in excess of 25% per annum in violation of Section 687.071, Florida Statutes, as reflected on Exhibit "I."

98.     Because the interest rates on the Bears Usurious Loans exceed the permissible rate under Section 687.071 of the Florida Statutes, the Bears Usurious Loans are unenforceable.

99.     Moreover, because the Bears Usurious Loans are unenforceable pursuant to Section 687.071 of the Florida Statutes, Defendants Bears and Kallman are required to forfeit all principal and interest payments made by Capitol pursuant to the Bears Usurious Loans (the "Forfeited Payments").

100.     Accordingly, the Forfeited Payments are owed by Defendants, Bears and Kallman, to Capitol, creating a debt that is property of Capitol's bankruptcy estate and is matured, payable on demand, or payable on order pursuant to Section 542(b) of the Bankruptcy Code.

101.     In addition, as Kallman, Jane Doe and John Doe were general partners of Bears, they can be held jointly and severally liable for the Forfeited Payments pursuant to New York Partnership Law § 26.

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

102.    Defendants Bears, Kallman, Jane Doe and John Doe have failed to turn over or repay the Forfeited Payments to the Trustee despite demand being made upon them.

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter 7 Trustee, respectfully requests this Court enter judgment on his behalf and against Defendants, Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe, jointly and severally, as follows:

(a)    finding that the Bears Usurious Loans are usurious loans under Florida law, and as such, are unenforceable under Section 687.071 of the Florida Statutes;

(b)    directing Defendants, Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe to turn over the Forfeited Payments to the Trustee in the amount of $3,468,666.69 (representing all principal and interest payments paid by Capitol pursuant to the Bears Usurious Loans as set forth on Exhibit "H"), plus pre-judgment interest and attorneys' fees in favor of the Trustee; and

(c)    granting such other and further relief as this Court deems just and proper.

**COUNT 8**
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT**
**TO 11 U.S.C. § 544(b) AND FLA. STAT. § 726.105(1)(a)**
**(Four-Year Loan Transfers – Bears)**

103.    Plaintiff realleges paragraphs 1 through 61 as though fully set forth herein.

104.    Within the four year period immediately preceding the Petition Date, Capitol made the Four-Year Loan Transfers totaling $4,518,666.69 to Bears as set forth in Exhibit "G."

105.    The Four-Year Loan Transfers constitute transfers of interests of Capitol's, and now, the Plaintiff's property.

106.    As Capitol was admittedly a Ponzi scheme at the time that it made the Four-Year Loan Transfers, by definition Capitol made the Four-Year Loan Transfers with actual intent to hinder, delay or defraud its other Lenders who are now creditors of Capitol.

107.    In addition, Capitol made the Four-Year Loan Transfers in order to perpetuate the Ponzi scheme.

108.    As a result of the Four-Year Loan Transfers, Bears received the total sum of $4,518,666.69.

109.    As is evidenced by Capitol's bankruptcy schedules and the proofs of claims filed in the Capitol case which exceed $111 million, there existed at least one creditor who could have avoided the Four-Year Loan Transfers.

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter 7 Trustee, respectfully requests this Court enter judgment on his behalf and against the Defendant, Bears Investment Company, as follows:

(a)    declaring the Four-Year Loan Transfers totaling $4,518,666.69 to Defendant, Bears Investment Company, avoidable transfers pursuant to Section 726.105(1)(a) of the Florida Statutes; and

(b)    granting such other and further relief as may be just and proper.

**COUNT 9**
**RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO**
**FLA. STAT. §726.108 AND FLA. STAT. §726.109 & 11 U.S.C. §§ 544 AND 550**
**(Four-Year Loan Transfers – Bears, Kallman, Jane Doe and John Doe)**

110.    Plaintiff incorporates and realleges paragraphs 1 through 61 and 104 through 109 of this Complaint as though fully set forth herein.

111.    The Four-Year Loan Transfers are avoidable by Plaintiff pursuant to Section 726.105(1)(a) of the Florida Statutes, and as a result, such Four-Year Loan Transfers are

Case No. 09-36408-BKC-LMI
Adv. No. _____

recoverable by the Plaintiff pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Sections 544 and 550 of the Bankruptcy Code.

112.    Bears was the initial transferee of the Four-Year Loan Transfers.

113.    As Kallman, Jane Doe and John Doe were general partnerd of Bears, they can be held jointly and severally liable for the Four-Year Loan Transfers pursuant to New York Partnership Law § 26.

114.    Alternatively, upon information and belief, Kallman was the subsequent transferee of the Four-Year Loan Transfers.

115.    As a result, Plaintiff may recover the value of the Four-Year Loan Transfers from Defendants, Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe, jointly and severally, pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 544 of the Bankruptcy Code

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter Trustee, respectfully requests that this Court enter a judgment on his behalf and against Defendants, Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe, jointly and severally, as follows:

(a)    declaring Bears Investment Company the initial transferee of the Four-Year Loan Transfers;

(b)    awarding damages against Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe, jointly and severally, in the total amount of $4,518,666.69, plus pre-judgment interest, attorneys' fees and costs in favor of the Trustee and directing Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe to turn over the Four-Year Loan Transfers pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Sections 544 and 550 of the Bankruptcy Code; and

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

Case No. 09-36408-BKC-LMI
Adv. No. _____

(c)        granting such other and further relief as this Court deems just and proper.

**COUNT 10**
**AVOIDANCE OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 544(b) AND FLA. STAT. § 726.105(1)(b)**
**(False Profit Transfers - Bears, Kallman, Jane Doe and John Doe)**

116.    Plaintiff realleges paragraphs 1 through 61 as though fully set forth herein.

117.    Bears made loans to Capitol pursuant to the LOC Agreement between February 2002 and September 2006.  Bears lent Capitol approximately $28.3 million between 2003 and 2009 and received payments from Capitol totaling approximately $30 million – a profit of $1.7 million – making Bears a "net winner" in the Capitol Ponzi scheme.

118.    Bears received $817,766.69 in interest payments (i.e. profits) within the four-year period prior to the Petition Date in which Capitol was operating as a Ponzi scheme as set forth on Exhibit "L" (the "False Profit Transfers").

119.    Capitol's only source of funds to make the False Profit Transfers was other Capitol lenders' funds.

120.    Accordingly, the False Profit Transfers are recoverable by the Trustee under prevailing law.

121.    The False Profit Transfers constitute transfers of interests of Capitol's, and now, the Plaintiff's property.

122.    Capitol received less than a reasonably equivalent value in exchange for the False Profit Transfers.

123.    As Capitol was admittedly operating a Ponzi scheme at the time that it made the False Profit Transfers:

A.        Capitol was insolvent on the dates that the False Profit Transfers were made, or became insolvent as a result of the subject transfer;

Tabas, Freedman, Soloff, Miller & Brown, P.A. · One Flagler Building, 14 Northeast First Avenue, Penthouse, Miami, Florida 33132 · (305) 375-8171

B.    Capitol was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Capitol was an unreasonably small capital; or

C.    Capitol intended to incur, or believed that it would incur debts that would be beyond Capitol's ability to pay as such debts matured.

124.    As a result of the False Profit Transfers, Bears received the total sum of $817,766.69.

125.    As is evidenced by Capitol's bankruptcy schedules and the proofs of claims filed in the Capitol case which exceed $111 million, there existed at least one creditor who could have avoided the False Profit Transfers on the Petition Date.

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter 7 Trustee, respectfully requests this Court enter judgment on his behalf and against Defendant, Bears Investment Company, as follows:

(a)    determining that the False Profit Transfers totaling $817,766.69 constitute fraudulent transfers and are avoidable pursuant to Section 726.105(1)(b) of the Florida Statutes and Section 544(b)(1) of the Bankruptcy Code; and

(b)    granting such other and further relief as this Court deems just and proper.

**COUNT 11**
**RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO FLA. STAT. § 726.108 AND FLA. STAT. § 726.109**
**(False Profit Transfers – Bears, Kallman, Jane Doe and John Doe)**

126.    Plaintiff incorporates and realleges paragraphs 1 through 61 and 117 through 125 of this Complaint as though fully set forth herein.

127.    The False Profit Transfers are avoidable by Plaintiff pursuant to Section 544(b)(1) of the Bankruptcy Code and Section 726.105(1)(b) of the Florida Statutes, and as

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

a result, the False Profit Transfers are recoverable by Plaintiff pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 550(a)(1) of the Bankruptcy Code.

128.    Bears was the initial transferee of the False Profit Transfers.

129.    As Kallman, Jane Doe and John Doe were general partners of Bears, they can be held jointly and severally liable for the False Profit Transfers pursuant to New York Partnership Law § 26.

130.    Alternatively, upon information and belief, Kallman was the subsequent transferee of the False Profit Transfers.

131.    As a result, Plaintiff may recover the value of the False Profit Transfers from both Bears, Kallman, Jane Doe and John Doe pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Sections 544 and 550 of the Bankruptcy Code.

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter Trustee, respectfully requests that this Court enter a judgment on his behalf and against Defendants, Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe, jointly and severally, as follows:

(a)    declaring Bears Investment Company the initial transferee of the False Profit Transfers;

(b)    awarding damages against Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe, jointly and severally, in the total amount of $817,766.69, plus pre-judgment interest in favor of the Trustee and directing Bears Investment Company, Robert J. Kallman, Jane Doe and John Doe, to turn over the False Profit Transfers to the Trustee pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 550(a)(1) of the Bankruptcy Code; and

(c)    granting such other and further relief as this Court deems just and proper.

Tabas, Freedman, Soloff, Miller & Brown, P.A. · One Flagler Building, 14 Northeast First Avenue, Penthouse, Miami, Florida 33132 · (305) 375-8171

Case No. 09-36408-BKC-LMI
Adv. No. _____

**COUNT 12**
**AVOIDANCE OF FRAUDULENT TRANSFERS**
**PURSUANT TO 11 U.S.C. § 544(b) AND FLA. STAT. § 726.105(1)(b)**
**(Fictitious Rents - Kallman)**

132.    Plaintiff realleges paragraphs 1 through 61 as though fully set forth herein.

133.    Within four years of the Petition Date, Capitol paid the Fictitious Rents to Kallman in the amount of $18,000.00 as set forth on Exhibit "F" (the "Fictitious Rent Transfers").

134.    The Fictitious Rent Transfers constitute transfers of interests of Capitol's, and now, the Plaintiff's property.

135.    Capitol did not receive any value in exchange for the Fictitious Rent Transfers because Capitol was not obligated to pay any rent to BBK, Bears or Kallman and thereby received less than reasonably equivalent value in exchange for the Fictitious Rent Transfers.

136.    As Capitol was admittedly operating a Ponzi scheme at the time that it made the Fictitious Rent Transfers:

A.    Capitol was insolvent on the dates that the Fictitious Rent Transfers were made, or became insolvent as a result of the subject transfer;

B.    Capitol was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Capitol was an unreasonably small capital; or

C.    Capitol intended to incur, or believed that it would incur debts that would be beyond Capitol's ability to pay as such debts matured.

137.    As a result of the Fictitious Rent Transfers, Kallman received the total sum of $18,000.00.

30

Case No. 09-36408-BKC-LMI
Adv. No. _____

138.    As is evidenced by Capitol's bankruptcy schedules and the proofs of claims filed in the Capitol case which exceed $111 million, there existed at least one creditor who could have avoided the Fictitious Rent Transfers on the Petition Date.

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter 7 Trustee, respectfully requests this Court enter judgment on his behalf and against Defendant, Robert J. Kallman, as follows:

(a)    determining that the Fictitious Rent Transfers totaling $18,000.00 constitute fraudulent transfers and are avoidable pursuant to Section 726.105(1)(b) of the Florida Statutes and Section 544(b)(1) of the Bankruptcy Code; and

(b)    granting such other and further relief as this Court deems just and proper.

**COUNT 13**
**RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO FLA. STAT. § 726.108 AND FLA. STAT. § 726.109**
**(Fictitious Rent Transfers - Kallman)**

139.    Plaintiff incorporates and realleges paragraphs 1 through 61 and 133 through 138 of this Complaint as though fully set forth herein.

140.    The Fictitious Rent Transfers are avoidable by Plaintiff pursuant to Section 544(b)(1) of the Bankruptcy Code and Section 726.105(1)(b) of the Florida Statutes, and as a result, the Fictitious Rent Transfers are recoverable by Plaintiff pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 550(a)(1) of the Bankruptcy Code.

141.    Kallman was the initial transferee of the Fictitious Rent Transfers.

142.    As a result, Plaintiff may recover the value of the Fictitious Rent Transfers from Kallman pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 550(a)(1) of the Bankruptcy Code.

TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A. · ONE FLAGLER BUILDING, 14 NORTHEAST FIRST AVENUE, PENTHOUSE, MIAMI, FLORIDA 33132 · (305) 375-8171

**WHEREFORE**, Plaintiff, Joel L. Tabas, as Chapter Trustee, respectfully requests that this Court enter a judgment on his behalf and against Defendant, Robert J. Kallman, as follows:

(a)      declaring Robert J. Kallman the initial transferee of the Fictitious Rent Transfers;

(b)      awarding damages against Robert J. Kallman in the total amount of $18,000.00, plus pre-judgment interest in favor of the Trustee and directing Robert J. Kallman to turn over the Fictitious Rent Transfers to the Trustee pursuant to Sections 726.108 and 726.109 of the Florida Statutes and Section 550(a)(1) of the Bankruptcy Code; and

(c)      granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 26th day of June, 2012.

/s/ Gary M. Freedman
Gary M. Freedman
Florida Bar No.: 727260
Andrea L. Rigali
Florida Bar No.: 42015
Tabas, Freedman, Soloff, Miller & Brown, P.A.
Attorneys for Joel L. Tabas
14 Northeast First Avenue, Penthouse
Miami, Florida 33132
Telephone:  (305) 375 8171
Facsimile:  (305) 381 7708
E mail: gary@tabasfreedman.com
E-mail: andrea@tabasfreedman.com

**BEARS INVESTMENT COMPANY**
45 Rodeo Drive
Syosset, New York 11791
Tel. (201) 339-7777  Fax (201) 858-7589

February 11, 2002

Capitol Investments USA, Inc.
6633 Collins Avenue #235
Miami Beach, FL 33140
Attention: Mr. Nevin Shapiro

RE:        Financial and Consulting Services

Gentlemen:

Upon your execution below and in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which by the parties is hereby acknowledged, the following (the "Agreement") will serve as the agreement by and between Capitol Investments USA, Inc. ("Capitol") and Bears Investment Company ("Bears") pursuant to which Bears will provide certain services to Capitol:

1.  Bears agrees to provide the financial and consulting services set forth below to Capitol on a mutually nonexclusive basis.

2.  Bears agrees to provide Capitol with a $1,000,000 line of credit for the purchase of consumer and other goods, satisfactory to Bears, based on verifiable purchase orders for such goods (the "PO Line of Credit") upon the terms and conditions set forth herein. Capitol hereby agrees to pay to Bears interest on any advances of the PO Line of Credit, from the day such funds are advanced by Bears until the date of payment is received and cleared at the lock-box described below at an annual rate of interest equal to twenty-five percent (25%), but in no event greater than the then maximum rate of interest at any time during the term hereof, permitted to be lawfully charged for commercial loans to corporate borrowers in the amount of the PO Line of Credit pursuant to the laws of the State of Florida.

3.  The term of this Agreement shall commence on the date hereof and shall end on the date that is two (2) years after such date and such term shall be automatically renewed for additional periods of two (2) years each unless Bears has provided Capitol with notice, at least thirty (30) days prior to the expiration date, of Bears' desire not to renew the term of this Agreement

4.  Prior to any advance of the PO Line of Credit, Capitol shall provide Bears with verifiable purchase orders for the purchase of goods as to which Capitol desires to use the PO Line of Credit. Verification by Bears shall be limited so as not to disclose any confidential information provided that, at a minimum, Bears must be provided with the description and quantity of the goods, the sales price of the goods, the purchaser of the goods, the address for delivery of the goods, the expected delivery date, a telephone number and a contact name for the purchaser of such goods, and Bears must be able to verify such purchase order to the satisfaction of Bears. It is agreed that the party conducting such verification shall not identify

NY217931.1
01024000070
02/06/2002 as

Post-it® Fax Note    7671    Date 4/17/02  # of pages ▶ 4
To  Scott Schneider          From  Robert Kollman
Co./Dept.                    Co.
Phone #                      Phone #
Fax #                        Fax #

**EXHIBIT**
**"A"**

BIC-00034

themselves as being a representative of Bears and that they shall at all times be courteous and professional.

5.  Once Bears approves and verifies a purchase order (an "Approved PO") and notifies Capitol of same, Capitol, if it has not already done so, shall provide Bears with an invoice (the "Supply Invoice") for the purchase of such goods to fulfill the Approved PO, provided that Capitol shall be permitted to black-out the name and address of the supplier of such goods to protect Capitol's proprietary and confidential information that is the basis of Capitol's business.

6.  Once Bears is in receipt of an Approved PO and a corresponding Supply Invoice, Bears agrees to fund one hundred percent (100%) of the amount of the Supply Invoice, but, when aggregated with all other outstanding advances of the PO Line of Credit, in no event shall Bears be required to advance an amount greater than the amount of the PO Line of Credit. Such funding by Bears shall be made within one (1) business day following the approval by Bears of the Approval PO and receipt of the corresponding Supply Invoice, subject to delays caused by events beyond the control of Bears (such as strikes, bank delays, etc.).  Capitol shall at all times have the right to redirect the Financing.

7.  Promptly after Bears advances the PO Line of Credit or applicable portion thereof to pay the Supply Invoice, Capitol will provide Bears with satisfactory proof of payment of such Supply Invoice, provided that Capitol shall be permitted to black-out the name and address of the supplier of such goods to protect Capitol's proprietary and confidential information that is the basis of Capitol's business.

8.  All Approved POs that are being financed in whole or part by the PO Line of Credit will be made in the name of Capitol with instructions to make payment to a designated lock-box, which lock-box shall be designated by Bears and be under the exclusive control of Bears.  In the event Capitol comes into possession of a check or other proceeds in payment of an Approved PO that should otherwise have been paid into said lock-box, Capitol will immediately forward such proceeds to Bears for payment and distribution as herein provided. Bear shall maintain an accounting as to the lock-box, which Capitol shall have the unlimited right to audit.

9.  After the funds in the lock-box have cleared distribution shall be made as follows: first to the payment of the principal amount of the applicable Supply Invoice; second to all interest due and owing on the outstanding amount of the PO Line of Credit; third to the payment of all applicable consulting fees due and owing to Bears; and fourth the balance of the funds remaining in the lock-box shall be transferred to Capitol. All such transfers shall be made by wire transfer.

10. Bears shall be notified of the place of delivery of the goods that are the subject of an Approved PO, and Bears shall have the right to verify the existence and condition of such goods but Bears agrees not to interfere with or delay any shipment. Bears also acknowledges that some shipments are direct to the customer and therefore may be unable to be inspected.

11. Capitol shall maintain insurance in the full amount of the cost of any goods shipped to Capitol (i.e. other than drop shipments to the customer), and Bears shall be named as the loss payee with respect thereto. Any insurance proceeds payable on account of a loss of

NY217931.1
010240000076
02/06/2002 as

2

said goods shall be paid to Bears and Bears is authorized to deduct therefrom the amounts as set forth in Paragraph 9 above.

12. Bears shall at all times, have the right to inspect the books and records of Capitol insofar as they pertain to Bears and/or the Approved POs, Supply Invoices and PO Line of Credit. Notwithstanding the foregoing, Capitol shall have the right to black-out any information from its books and records to protect its proprietary and confidential information and information that does not pertain to Bears.

13. In addition to the PO Line of Credit to be provided by Bears, Bears shall, from time to time, provide Capitol with consulting services, the fees for which shall be mutually determined by Bears and Capitol.

14. Bears agrees to execute the attached confidentiality and non-circumvention agreement with Capitol to protect proprietary and confidential information.

15. This Agreement and the rights and obligations of the parties hereunder, will be construed, interpreted and enforced in accordance with, and governed by, the laws of the State of Florida, without giving effect to any choice of law provisions therein. Venue shall reside in Miami-Dade County, Florida. If any action or proceeding is commenced to enforce the rights of the parties hereto, the prevailing party shall be entitled to receive its out-of-pocket fees and disbursements, including reasonable attorneys fees, from the non-prevailing party.

16. Except as otherwise provided herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their heirs, executors, administrators, successors, legal representatives and assigns.

17. Should any portion of this Agreement for any reason be declared invalid, whether by court or legislative action, such decisions shall not affect the validity of any remaining portion, which remaining portion shall remain in full force and effect as if this Agreement had been executed with the invalid portion thereof eliminated.

18. Bears and Capitol are not partners or joint venturers, and nothing herein shall imply otherwise.

19. Bears agrees to comply with any and all Capitol requests for information necessary in order for Capitol to be in compliance with state and federal laws, regulations, and requirements. Bears further agrees to abide by all laws, regulations, and requirements applicable to it and Capitol.

20. Each party represents and warrants to the other party that it has the appropriate legal authority to execute this Agreement and that it is not bound by any agreement, which precludes it from complying with the terms and conditions, set forth herein.

21. This Agreement may not be assigned, delegated nor transferred without the written consent of the other party.

22. No provisions of this Agreement may be amended, modified or otherwise altered unless in writing and executed by the parties.

NY217931.1
01024000070
02/06/2002 ss

3

BIC-00036

04/17/2002  15:53    12018587573                        BOOKAZINE     ᴜᴜᴜ ᴜᴜ₁~ɪᴇɪᴜ          PAGE  04
                                                                                                ₚ.ᴜ

23. Any notice required or permitted to be given pursuant to the terms and provisions hereof will be in writing and will be either: (i) hand delivered; (ii) sent by overnight courier or (iii) sent by certified mail, return receipt requested to the parties at their respective addresses set forth below and, if hand delivered, shall be deemed received when actually delivered, if sent by overnight courier, shall be deemed received the next business day after transmission, and if sent by certified mail, shall be deemed received three days after mailing:

To Bears at:                        45 Rodeo Drive
                                    Syosset, New York 11791

To Capitol at:                      Capitol Investments USA, Inc.
                                    6538 Collins Avenue #235
                                    Miami Beach, FL. 33140

Sincerely,

BEARS INVESTMENT COMPANY

By: _____

This Agreement is agreed to and accepted as of February 8, 2002.

Capitol Investment USA, Inc.

By: _____
Print Name: _____
Print Title: _____
Date: _____

NY217931.1
01024000070
02/06/2002 ᴜ

4

BIC-00037

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is made and entered into as of the _____ day of October 2006, by and among BEARS INVESTMENT COMPANY ("BIC"), ROBERT KALLMAN ("Kallman"), CAPITOL INVESTMENTS USA, INC., a Florida corporation ("Capitol") and NEVIN K. SHAPIRO ("Shapiro").

### I.    RECITALS

A.    On or about February 11, 2002, BIC and Capitol entered into an agreement (as amended, the "LOC Agreement"), pursuant to which BIC agreed, among other services, to provide Capitol with certain financial accommodations.

B.    Concurrently with the execution and delivery of the LOC Agreement, BIC and Capitol entered into a certain Non-Circumvention & Non-Disclosure Agreement (as amended, the "NCND Agreement") pursuant to which, among other things, BIC agreed to not interfere with or utilize any business relationships of Capitol.

C.    On or about June 10, 2002, Capitol executed and delivered a certain Security Agreement (as amended, the "Security Agreement") to and in favor of BIC, pursuant to which Capitol granted to BIC a security interest in the collateral of Capitol to secure the financial accommodations extended under the LOC Agreement, and, in order to perfect such security interest, BIC filed a UCC-1 Financing Statement (the "UCC-1") with the Florida Secured Transaction Registry on October 18, 2002 as Filing Number 200202437262.

D.    As of the date hereof, the principal amount of $2,000,000 is outstanding and due and owing by Capitol to BIC under the LOC Agreement, together with accrued and unpaid interest thereon from September 1, 2006.

E.    Disputes have arisen between Capitol and BIC in respect of the parties' respective obligations under the LOC Agreement and the NCND Agreement.

F.    BIC, Kallman, Capitol and Shapiro wish now fully to forever resolve and compromise all disputes, claims, and potential claims between and among them, arising from or related to the LOC Agreement and the NCND Agreement and/or otherwise at law or in equity for the consideration and in accordance with the terms and conditions set forth in this Agreement, without admission of liability or fault and solely to avoid the uncertainties and expenses associated with litigation.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements contained herein and for other good and valuable consideration, the

EXHIBIT

BIC-00010    "B"

receipt and sufficiency of which is hereby acknowledged, BIC, Kallman, Capitol and Shapiro, intending to be legally bound hereby, agree as follows:

## II.   SETTLEMENT TERMS

A. BIC hereby forgives the amount of and reduces the indebtedness of Capitol due to BIC under the LOC Agreement by (i) the principal amount of $950,000.00 and (ii) the interest due and owing under the LOC Agreement for the period from September 1, 2006 through October 31, 2006 (the "Forgiveness of Debt"). After giving effect to the Forgiveness of Debt, the principal amount of $1,050,000.00 shall be due and owing by Capitol to BIC. Capitol hereby irrevocably and unconditionally agrees to pay BIC the principal amount of $1,050,000.00 on or before November 1, 2006, time being of the essence, by wire transfer to BIC's counsel (pursuant to instructions set forth on Schedule A hereto), without offset, defense, set-off or counterclaim of any kind, nature or description whatsoever. Should Capitol fail to pay BIC the full principal amount of $1,050,000.00 on or before November 1, 2006, interest shall accrue and be payable on such unpaid amount at a rate of interest equal to twenty-five percent (25%) per annum, but in no event in excess of the maximum rate permitted by law.

B. All other obligations of the parties arising under or related to the LOC Agreement, and the LOC Agreement itself, are hereby terminated and are of no further force or effect.

C. The NCND Agreement is hereby terminated in its entirety, and all of the promises, covenants and obligations of the parties thereto shall terminate and be of no further force or effect.

D. Upon the full and indefeasible payment of all amounts due to BIC as provided in Paragraph A of this Article II, BIC will release and terminate the UCC-1, and upon such release and termination, the Security Agreement will be deemed terminated and of no further force or effect. In furtherance of the foregoing, BIC will cause its counsel to prepare and file any required termination of the UCC-1 and BIC will execute same if required.

E. To induce BIC to enter into this Agreement and to provide the Forgiveness of Debt, Shapiro hereby irrevocably and unconditionally guarantees to BIC the full and timely payment of all amounts due and owing by Capitol to BIC under Paragraph A of this Article II and otherwise under this Agreement on the part of Capitol to be paid, without offset, defense, set-off, counterclaim, notice or demand of any kind, nature or description and howsoever arising.

## III.    RELEASES

A.    In consideration of the recitals, mutual covenants, representations, warranties, releases, performances and other agreements contained or provided for in this Agreement, and for such other and further consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, BIC, Kallman, Capitol and Shapiro further agree as follows:

(i)    Capitol and Shapiro, individually and collectively, jointly and severally, hereby completely and generally release and forever discharge BIC and Kallman, and each of its and his parent, affiliated and subsidiary corporations, companies, partnerships, limited partnerships, joint ventures, and the partners, limited partners, members, managers, shareholders, officers, directors, employees, agents, attorneys, and representatives, and the successors and assigns of each of them (collectively, the "Kallman Entities"), or any of them, of and from any and all past, present and future claims, demands, obligations, actions, causes of action, rights, damages, expenses, fees, attorney's fees, and requests or demands for compensation or payment of any nature whatsoever, whether based on tort, contract, or any other theory of recovery, including negligence and/or fraud, and whether for compensatory, consequential or punitive damages or other relief or remedy, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, whether direct or indirect or third party or derivative, whether fixed or contingent, and whether secured or unsecured, which Capitol and/or Shapiro, and each of its and his parent, affiliated and subsidiary corporations and companies, partnerships, limited partnerships, joint ventures and the partners, limited partners, members, managers, shareholders, officers, directors, employees, agents, attorneys and representatives, and the successors and assigns of each of them (collectively, the "Shapiro Entities"), individually and collectively ever had or now has or will or may have against the Kallman Entities, or any of them, for, upon, or by reason, directly or indirectly, of any matter, cause, or thing whatsoever (excluding breach of this Agreement), arising out of, related to, or in connection with the LOC Agreement, the NCND Agreement, the Security Agreement or the relationship and/or dealings of the parties relating thereto or otherwise at law or in equity, from the date of the beginning of the world to the date hereof, all to the fullest extent allowed by United States federal, state or local law and the national or local law of any foreign country (statutory or decisional).

(ii)    Upon the full and indefeasible payment of the amounts due and owing to BIC under Paragraph A of Article II of this Agreement, the Kallman Entities, individually and collectively, jointly and severally, hereby completely and generally release and forever discharge the Shapiro Entities, or any of them, of and from any and all past, present and future claims, demands, obligations, actions, causes of action, rights, damages, expenses, and requests or demands for compensation or payment of any nature whatsoever, whether based on tort, contract, or any other theory of recovery, including negligence and/or fraud, and whether for compensatory, consequential or punitive damages or other relief or remedy, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, whether

BIC-00012

direct or indirect or third party or derivative, whether fixed or contingent, and whether secured or unsecured, which the Kallman Entities individually and collectively ever had or now has or will or may have against the Shapiro Entities, or any of them, for, upon, or by reason, directly or indirectly, of any matter, cause, or thing whatsoever (excluding breach of this Agreement), arising out of, related to, or in connection with the LOC Agreement, the NCND Agreement, the Security Agreement or the relationship and/or dealings of the parties related thereto or otherwise at law or in equity, from the date of the beginning of the world to the date hereof, all to the fullest extent allowed by United States federal, state or local law and the national or local law of any foreign country (statutory or decisional).

B.     Notwithstanding anything herein to the contrary, nothing herein shall constitute, or be deemed to be, a release or discharge of Craigco, Inc. ("Craigco") or Craig T. Currie ("Currie") of the indebtedness evidenced by the Promissory Note (the "Currie Note") dated of even date herewith in the principal amount of $510,000.00, which was formerly an obligation of Capitol to BIC, but which obligations have been assumed in total and for all purposes by Craigco and Currie.

C.     Each party hereto agrees and accepts the consideration provided for herein as a satisfactory compromise of matters involving disputed issues of law and fact, and the parties hereto fully assume the risk that the facts and the law may be otherwise than each of them believes.

## IV.    COVENANT NOT TO SUE

A.     The parties hereto agree, promise, and covenant not to file, join, or continue to prosecute any claims, demands, obligations, actions, causes of action, third-party actions, rights, damages, expenses, or requests for compensation or payment of any nature whatsoever, released or intended to be released pursuant to this Agreement, except to enforce the terms hereof.

## V.    MISCELLANEOUS

A.     Each party hereto represents and warrants that it has full authority to enter into this Agreement on behalf of that party and the authority and capacity to bind that party hereto as well as and on behalf of those for whom they sign and that (i) they have obtained all necessary approvals, consents, and authorizations to enter into this Agreement and to perform and carry out its obligations hereunder; (ii) the persons executing this Agreement on behalf of each party has express authority to do so, and, in so doing, to bind the party they purport to represent; (iii) the execution, delivery, and performance of this Agreement does not violate any provision of any bylaw, charter, regulation, or any other governing authority of any corporate parties hereto; (iv) the execution, delivery, and performance of this Agreement has been duly authorized by all necessary partnership and

BIC-00013

corporate action of the corporate and partnership parties; and (v) this Agreement is a valid and binding obligation of each party, enforceable in accordance with its terms.

B.    Each party hereto shall bear its own respective legal and other costs to date, and the costs of proceedings, disputes, negotiations, and any other costs relating to or in connection with the subject matter or the negotiation of this Agreement, and the matters and documents referred to herein, including the matters released herein.

C.    The parties hereto agree and acknowledge that this Agreement and all actions taken pursuant to it are done and accepted as a full and complete compromise of disputed claims and issues and specifically deny all liability for such claims; that neither this Agreement nor any actions undertaken in connection therewith by the parties hereto, their attorneys, or representatives shall be considered admissions by any of said parties; and that no past or present wrongdoing, fault, or failure on the part of any party hereto or its or their representatives, agents, or employees, or of any person or any entity acting or purporting to act by, through or on its behalf, shall be implied or inferred from such matters or such actions. Neither this Agreement nor any of its terms shall be offered or received in evidence in any proceeding or utilized in any manner whatsoever; provided, however, that nothing contained in this Paragraph shall prevent this Agreement from being used, offered, or received into evidence in any proceeding to approve, enforce, or otherwise effectuate this Agreement. It is agreed that no rule of construction shall apply against any party or in favor of any party hereto. This Agreement shall be construed as if the parties hereto jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

D.    In entering into this Agreement, each party hereto represents that they have read this Agreement and that the terms of the Agreement are fully understood and voluntarily accepted.

E.    As expressly provided herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their legal representatives, successors (by purchase, assignment, foreclosure, or whatever means), heirs and assigns.

F.    This Agreement contains the entire agreement between the parties hereto with regard to the matters set forth herein, and cancels and supersedes all prior representations, negotiations, proposals, commitments, writings, publications and understandings of any nature whatsoever concerning this subject matter, if any.   THERE ARE NO OTHER PROMISES, UNDERSTANDINGS,   REPRESENTATIONS,   WARRANTIES, COVENANTS, OR AGREEMENTS, VERBAL OR OTHERWISE, IN

BIC-00014

RELATION THERETO BETWEEN THE PARTIES, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT.

G.  The provisions of this Agreement may be changed, waived, modified, varied or terminated only by written agreement signed by all of the parties hereto.

H.  This Agreement may be executed in multiple counterparts (with certain Parties signing certain counterparts and other parties signing other counterparts) including facsimile counterparts, each of which shall be deemed an original, or with detachable signature pages, which shall be construed together and shall be effective as if all executed in one, unified document. When all counterparts of this Agreement have been signed by all parties, it shall constitute a binding agreement.

I.  If any of the provisions of this Agreement shall be adjudged to be invalid or unenforceable under applicable law, such invalidity or unenforceability shall not invalidate or render this Agreement and its remaining provisions unenforceable, provided however, if for any reason whatsoever the Release provided by the Shapiro Entities is adjudged to be invalid and unenforceable, then the Forgiveness of Debt provided in Paragraph A of Article II hereof shall be null and void ab initio and Capitol shall remain obligated to BIC for the amounts which would otherwise have been forgiven thereunder, which amounts shall become immediately due and payable to BIC and continue to be secured under the Security Agreement, notwithstanding any provision herein to the contrary.

J.  The Parties agree to cooperate and use their best efforts to consummate the transactions described in this Agreement and to take all actions necessary to effectuate the compromise and settlement set forth herein.

K.  Should any party hereto be forced to bring an action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party(s) reasonable attorney's fees and expenses incurred by the prevailing party therein.

L.  Each of the undersigned individuals signing below represents and warrants that he or she is fully authorized to execute this Agreement and to enter into the terms and conditions hereof on behalf of the party on whose behalf each such individual has executed this Agreement.

M.  Capitol and Shapiro shall be solely responsible for payment of any and all documentary stamps and other taxes applicable to the obligations set forth in Article II of this Agreement.

N.  As to the obligations of Capitol and Shapiro under this Agreement, Capitol and Shapiro jointly and severally waive all applicable exemption rights, whether under the state Constitution, Homestead laws or otherwise, and

NY535601.1
01024000070

6

BIC-00015

also severally waive, valuation and appraisement, presentment for payment, protest, notice of protest, dishonor and nonpayment of such obligations, and expressly agree that any payment hereunder may be extended from time without in any way affecting the liability of Capitol and/or Shapiro.

O.   Any delay by BIC in exercising any right or remedy shall not constitute a waiver thereof. No waiver by BIC of any default hereunder shall be deemed to constitute a waiver of any subsequent default. No exercise of any right or remedy hereunder shall preclude the exercise of any other right or remedy which BIC may have in law or in equity to enforce the provisions of this Agreement or the collection of any amounts due BIC hereunder.

P.   Any notice, demand, request, instruction, correspondence or other document to be given hereunder shall be in writing and delivered personally or mailed by registered or certified mail, postage prepaid and return receipt requested, or by facsimile, as follows:

If to Shapiro or Capitol:      400 41st Street, #506
                               Miami Beach, Florida 33140
                               Phone: (305) 673-4606
                               Fax:   (305) 673-4607

If to BIC or Kallman:          c/o Scott I. Schneider, Esq.
                               Loeb & Loeb, LLP
                               345 Park Avenue,
                               New York, New York 10154
                               Phone: (212) 407-4078
                               Fax:   (212) 202-7816

Each of the above addresses for notice purposes may be changed by providing appropriate notice hereunder. Notice shall be effective upon receipt evidenced by the applicable delivery receipt, written affidavit of the deliverer, or facsimile confirmation.

Q.   This Agreement and any documents delivered pursuant hereto shall be governed by and construed in all respects, including validity, interpretation, effect, and enforcement, in accordance with the laws of the State of Florida without regard to conflict of law principles thereof. Capitol and Shapiro, and each of them irrevocably submit to the jurisdiction of the Circuit Court of the State of Florida, Miami-Dade County, in any action or proceeding arising out of or relating to this Agreement, or any documents delivered pursuant hereto, and Capitol and Shapiro, and each of them, irrevocably agree that all claims in respect of any such action or proceeding must be brought and/or defended in such court; provided, however, that matters which are under the exclusive jurisdiction of the Federal courts shall be brought in the Federal District

BIC-00016

Court for the Southern District of Florida. Capitol and Shapiro, consent to service of process by any means authorized by the applicable law of the forum in any action brought under or arising out of this Agreement or any documents delivered pursuant hereto. Capitol and Shapiro, and each of them, irrevocably waive, to the fullest extent each may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. THE PARTIES HERETO, AND EACH OF THEM, HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT THEY MAY LEGALLY AND EFFECTIVELY DO SO, TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING ARISING HEREUNDER.

NY535601.1
01024000070

8

BIC-00017

**BEARS INVESTMENT COMPANY**

By: _____

Name: __Robert  KALLMAN__
            (Type/Print)

Title: __President__

Date: _____

Witnessed By:

By: _____

Name: __HAROLD JAMES AXELROD__

Date: _____

_____
**ROBERT KALLMAN**

Date: _____

Witnessed By:

By: _____

Name: __HAROLD JAMES AXELROD__

Date: _____

NY515601.1
01024000070

9

BIC-00018

**CAPITOL INVESTMENTS USA, INC.**

By: _____

Name: _____Nevin K. Shapiro_____
           (Type/Print)

Title: _____President_____

Date: _____October 20, 2006_____

Witnessed By:

By: _____

Name: _____Evelyn Mortel_____

Date: _____10/20/06_____

_____

NEVIN K. SHAPIRO

Date: _____October 20, 2006_____

Witnessed By:

By: _____

Name: _____MARIA E. VALDES_____

Date: _____10/20/06_____

NY535601.1
01024000070

10

BIC-00019

## SCHEDULE A

CITIBANK, N.A.
153 EAST 53RD STREET
NEW YORK, NEW YORK 10022
ATTN: SCOTT I. SCHNEIDER

LOEB & LOEB LLP TRUST ACCOUNT
ACCOUNT # 24576266
ABA # 021000089
SWIFT CODE: CITI US 33

NY535601.1
01024000070

11

03/30/2010  16:22    2018587676                                    PAGE 08/08
Feb-11-02 03:13P                                                   P.16

**CRAIGCO, INC. C/O**
**CAPITOL INVESTMENTS USA, INC.**
6538 COLLINS AVE. PMB # 235 MIAMI BEACH, FL 33141
PHONE (305) 673-4604  FAX (305) 673-4607
E-Mail: capinvest4you@aol.com

## Request For Funding Summary

February 11, 2007

| P.O. # | P.O. Date | Wire Transf. | Invoice # | Name Vendor | Gross Amount | Remarks |
|--------|-----------|--------------|-----------|-------------|--------------|---------|
|  | 2/11/2002 | 2/12/2002 |  | BAZOOKA | 100,000.00 | CR1211-1A |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

TOTAL                      100,000.00

Latest Version
Discard all Previous
Date:                      AUTHORIZED

BIC-00008

**EXHIBIT**
**"C"**

## CRAIGCO, INC. C/O
## CAPITOL INVESTMENTS USA, INC.
6538 Collins Ave. PMB # 235  Miami Beach, FL 33141
Phone (305) 673-4606  Fax (305) 673-4607
E-Mail: capinvest4you@aol.com

No.
CR2121A

# Request For Funding

**Product**

| BAZOOKA | | Amount | 100,000.00 |
|---------|--|--------|-----------|

**Customer**

|  |  |  |  | Yes | No |
|--|--|--|--|-----|----|
| SULTANA DISTRIBUTORS | | P.O. # | N/A | | |
| | | Attached Copy | | | X |
| | | Verified | | X | |

**Wire To:**

| Date | 2/12/2002 | Capitol's Invoice # | |
|------|-----------|---------------------|--|
| | | Date | |

Copy Of Wire Transfer

Bill Of Lading #

**Remarks :**

**Bears Investment Company**
45 Rodeo Drive
Syosset, New York 11791
Tel. (201) 339-7777  Fax (201) 858-7589

**Wire Transfer**

| | | Date: | |
|--|--|-------|--|
| | | Deal # | |

**Remarks :**

**Receivable Acknowledgement**

| | | Date: | |
|--|--|-------|--|

**Deal Closed Date**

Latest Version
Discard all Previous
Date:

BIC-00007

Feb-15-02 11:56A

## CRAIGCO, INC. C/O
## CAPITOL INVESTMENTS USA, INC.

6538 Collins Ave. PMB # 235 Miami Beach, FL 33141
Phone (305) 673-4806 Fax (305) 673-4807                    No. CR215-1A
E-Mail capinvest4you@aol.com

# Request For Funding

**Product**

| BAZOOKA | | Amount | 108,000.00 |
|---|---|---|---|

**Customer**

| SULYANA DISTRIBUTORS | | P.O. # | | |
|---|---|---|---|---|
| | | Attached Copy | Yes | No |
| | | Verified | Yes X | No |

**Wire To**

| Date | 2/15/2002 | Capitol's Invoice # | |
|---|---|---|---|
| | | | Date: |

**BOL #**

Copy Of Wire Transfer

Remarks

**Bears Investment Company**
45 Rodeo Drive
Syosset, New York 11791
Tel. (201) 339-7777    Fax (201) 858-7589

| Wire Transfer | | Date | Deal # |
|---|---|---|---|

Remarks

| Receivable Aknowledgement | | Date | |
|---|---|---|---|

Deal Closed Date:

BIC-00003

## NON-CIRCUMVENTION & NON-DISCLOSURE AGREEMENT

This Agreement is made and entered into this __ day of _____ 2002, by and between Capitol Investment USA, INC. ("CAPITOL") and Bears Investment Company ("COMPANY").

### WITNESSETH

**WHEREAS,** CAPITOL intends to obtain on a nonexclusive basis accounts receivable and purchase order financing from COMPANY to fulfill its short term capital needs ("Funding"); and

**WHEREAS,** CAPITOL may disclose the names of its employees, customers, suppliers, vendors and contractors (collectively "Contacts") as part of this Funding; and

**WHEREAS,** COMPANY wishes to provide the Funding to CAPITOL on a nonexclusive basis; and

**WHEREAS,** the identity of the Contacts, information, and all other documents provided by CAPITOL to COMPANY in connection with the Funding have substantial commercial value and contain certain confidential and proprietary information not otherwise publicly available which CAPITOL wishes to keep confidential (the "Confidential Information"); and

**WHEREAS,** COMPANY agrees that it shall not utilize the Confidential Information or other information of a proprietary nature of CAPITOL in violation of this Agreement or to circumvent CAPITOL to obtain a direct relationship with the Contacts.

In consideration of the mutual promises, undertakings, covenants and conditions herein contained, and other good and valuable consideration, the receipt and sufficiency of which, is hereby acknowledged and agreed, the parties hereto hereby agree and covenant as follows:

1. COMPANY and its respective officers, directors, agents, subsidiaries, affiliates, nominees, shareholders, buyers, members, relatives and/or associates, hereby agree to undertake and honor this Agreement in accordance with industry and legal standards. Such non-circumvention and non-disclosure covenants shall continue for the longer of five (5) years from the later of (i) the date of execution hereof or (ii) the last day upon which any transaction occurred under which the parties hereto would be bound by this paragraph (e.g. the date of the last funding by the Funding.)

A. COMPANY agrees and acknowledges that CAPITOL is in possession of the Confidential Information, which may be disclosed or revealed as a result of this Agreement, including, but not limited to the following: (i) the names of Contacts; (ii) the names officers, principals, agents, addresses, telephone and facsimile numbers of the Contacts; (iii) pricing structures; (iv) documents/documentation relating to the proposed



BIC-00039

Funding; and (v) any other related information or material revealed which is not generally available to the public. All of the above shall be deemed to be the exclusive, confidential and proprietary property of CAPITOL.

B. COMPANY expressly agrees and warrants to CAPITOL, irrevocably and irretrievably, that it will not overtly or covertly communicate, associate, solicit business or in any other way attempt to conduct business with any Contacts for any personal, private or third party transaction without the express written consent of CAPITOL.

C. COMPANY will not call upon any Contacts or in any way solicit, divert or take away any employee, client, customer, vendor, supplier, or contractor of COMPANY who was a employee, client, customer, vendor, supplier, or contractor of CAPITOL without the express written consent of CAPITOL.

D. COMPANY will not disturb, hire, entice away or in any other manner persuade any Contacts or cause them to alter, modify or terminate their relationship with CAPITOL without the express written consent of CAPITOL.

E. COMPANY will take appropriate action by instruction, agreement, or otherwise, with its affiliates, employees, agents, clients, representatives, legal counsels, banks officers, directors, buyers, and/or any other individuals (collectively "Representatives") permitted access to any Confidential Information to inform them of the provisions of this Agreement, and obtain their acceptance of and agreement to abide by the terms hereof.

F. COMPANY agrees that notwithstanding such action taken by it, COMPANY shall be responsible to CAPITOL for any loss or damage caused to CAPITOL by reason of the failure of Representatives to comply with the provisions of this section.

G. That the COMPANY shall promptly notify CAPITOL in writing, if it becomes aware of any breach of confidence, by COMPANY or Representatives and shall give it all reasonable assistance and cooperation in connection in any proceedings which may be instituted against any person or entity that has disclosed any Confidential Information.

H. COMPANY acknowledges and agrees that any breach of the provisions of this Agreement would cause immediate and irreparable harm to CAPITOL, although such damage would be very difficult to measure or quantify. The parties, therefore, provide and agree that COMPANY will pay CAPITOL the sum of five hundred thousand dollars as and for liquidated damages in the event of any breach of these provisions, such liquidated damages are not to be construed as any penalty, but as a reasonable means of reassessing the actual damages which would be suffered.

2. If either party decides not to terminate this Agreement, even though it has the right to do so in a particular instance, or delays its decision to terminate, such decision will not be considered a waiver of its right to terminate on a future occasion for the same

2

BIC-00040

or any other reason, and any other waivers of the breach of any provision of this Agreement shall not be construed as a waiver of any subsequent breach of the same or another provision.

3. Any notice required or permitted to be given pursuant to the terms and provisions hereof will be in writing and will be either: (i) by hand delivered; (ii) sent by overnight courier or (iii) sent by certified mail, return receipt requested to the parties at their respective addresses set forth below and, if hand delivered, shall be deemed received when actually delivered, if sent by overnight courier, shall be deemed received the next business day after transmission, and if sent by certified mail, shall be deemed received three days after mailing:

| | |
|---|---|
| To COMPANY at: | 45 Rodeo Drive<br>Syosset, New York 11791 |
| To CAPITOL at: | Capitol Investments USA, Inc.<br>6538 Collins Avenue #235<br>Miami Beach, FL. 33140 |

4. Except as otherwise provided herein, this Agreement shall be binding upon and inure to the benefit of the parties and their heirs, executors, administrators, successors, legal representatives and assigns.

5. This Agreement, and the rights and obligations of the parties hereunder, will be construed, interpreted and enforced in accordance with, and governed by, the laws of the State of Florida, without giving effect to any choice of law provisions therein. Venue shall reside in Miami-Dade County.

6. Should any portion of this Agreement for any reason be declared invalid, whether by court or legislative action, such decisions shall not affect the validity of any remaining portion, which remaining portion shall remain in full force and effect as if this Agreement has been executed with the invalid portion thereof eliminated, and it is hereby declared the intention of the parties hereto that they would have executed the remaining portion of this Agreement without any such portion which may, for any reason, be herein declared invalid.

7. This Agreement, including recitals constitutes the entire understanding of the parties hereto and no changes, amendments or alterations will be effective unless in writing and signed by both parties.

8. The parties represent and acknowledge that they: (i) have had adequate time and opportunity to consult with counsel of their choosing prior to execution thereof; (ii) each fully understands the facts and has been fully informed as to any legal rights and obligations in connection therewith, by those selected solely by them; and (iii) having had such advise, or lack thereof by voluntary choice have executed this Agreement freely and without reservation.

3

BIC-00041

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

CAPITOL:

By: _____
Print Name: _____
Print Title: _____

COMPANY

By: _____
Print Name: _____
Print Title: _____

4

BIC-00042

.CAPITOL INVESTMENTS USA, INC.

# Receipt

6538 COLLINS AVE SUITE # 235
MIAMI BEACH, FL 33141

| DATE | Receipt NO. |
|------|-------------|
| 01/27/2005 | 1022 |

| Charge TO |
|-----------|
| BBK Wholesale, LLC.,<br>615 South Dupont Highway<br>Dover, Delaware 19901 |

| PAYMENT METH... | PROJECT |
|-----------------|---------|
|                 |         |

| DESCRIPTION | AMOUNT |
|-------------|--------|
| Rent February 2005 | 3,000.00 |
| **Total** | $3,000.00 |



RK-00009

**EXHIBIT F**
**FICTITIOUS RENTS**

| TRANSFEROR | TRANSFEREE | TRANSFER DATE | TRANSFER AMOUNT |
|---|---|---|---|
| Capitol Investments | Kallman/BBK | 02/27/2006 | 3,000.00 |
| Capitol Investments | Kallman/BBK | 03/27/2006 | 3,000.00 |
| Capitol Investments | Kallman/BBK | 04/26/2006 | 3,000.00 |
| Capitol Investments | Kallman/BBK | 05/30/2006 | 3,000.00 |
| Capitol Investments | Kallman/BBK | 06/28/2006 | 3,000.00 |
| Capitol Investments | Kallman/BBK | 09/01/2006 | 3,000.00 |
| | | **TOTALS** | **$       18,000.00** |

*Source: Debtor's Quickbooks accounting records*

EXHIBIT
"F"

EXHIBIT G

FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 11/30/2005 | Bears Investments | Interest | 28,750.00 |
| Capitol - BofA OPER 6842 | 12/5/2005 | Bears Investments | Interest | 3,500.00 |
| Capitol - BofA OPER 6842 | 12/8/2005 | Bears Investments | Interest | 3,500.00 |
| Capitol - BofA OPER 6842 | 12/8/2005 | Bears Investments | Principal | 235,000.00 |
| Capitol - BofA OPER 6842 | 12/12/2005 | Bears Investments | Interest | 3,500.00 |
| Capitol - BofA OPER 6842 | 12/12/2005 | Bears Investments | Principal | 235,000.00 |
| Capitol - BofA OPER 6842 | 12/15/2005 | Bears Investments | Interest | 3,852.50 |
| Capitol - BofA OPER 6842 | 12/15/2005 | Bears Investments | Interest | 3,996.25 |



EXHIBIT "G"

EXHIBIT G
FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 12/15/2005 | Bears Investments | Interest | 4,053.75 |
| Capitol - BofA OPER 6842 | 12/15/2005 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 12/15/2005 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 12/15/2005 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 12/15/2005 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 12/20/2005 | Bears Investments | Interest | 3,500.00 |
| Capitol - BofA OPER 6842 | 12/28/2005 | Bears Investments | Interest | 3,500.00 |
| Capitol - BofA OPER 6842 | 12/30/2005 | Bears Investments | Interest | 4,109.33 |

EXHIBIT G
## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 12/30/2005 | Bears Investments | Interest | 4,262.67 |
| Capitol - BofA OPER 6842 | 12/30/2005 | Bears Investments | Interest | 4,324.00 |
| Capitol - BofA OPER 6842 | 12/30/2005 | Bears Investments | Interest | 4,385.33 |
| Capitol - BofA OPER 6842 | 12/30/2005 | Bears Investments | Interest | 4,385.34 |
| Capitol - BofA OPER 6842 | 12/30/2005 | Bears Investments | Interest | 4,600.00 |
| Capitol - BofA OPER 6842 | 12/30/2005 | Bears Investments | Interest | 4,600.00 |
| Capitol - BofA OPER 6842 | 1/5/2006 | Bears Investments | Interest | 3,500.00 |
| Capitol - BofA OPER 6842 | 1/10/2006 | Bears Investments | Interest | 2,000.00 |

EXHIBIT G
FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 1/10/2006 | Bears Investments | Principal | 200,000.00 |
| Capitol - BofA OPER 6842 | 1/13/2006 | Bears Investments | Interest | 3,500.00 |
| Capitol - BofA OPER 6842 | 1/17/2006 | Bears Investments | Interest | 3,852.50 |
| Capitol - BofA OPER 6842 | 1/17/2006 | Bears Investments | Interest | 3,996.25 |
| Capitol - BofA OPER 6842 | 1/17/2006 | Bears Investments | Interest | 4,053.75 |
| Capitol - BofA OPER 6842 | 1/17/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 1/17/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 1/17/2006 | Bears Investments | Interest | 4,312.50 |

EXHIBIT G
FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 1/17/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 1/23/2006 | Bears Investments | Interest | 3,500.00 |
| Capitol - BofA OPER 6842 | 1/24/2006 | Bears Investments | Interest | 3,600.00 |
| Capitol - BofA OPER 6842 | 1/24/2006 | Bears Investments | Principal | 240,000.00 |
| Capitol - BofA OPER 6842 | 1/30/2006 | Bears Investments | Interest | 3,500.00 |
| Capitol - BofA OPER 6842 | 1/31/2006 | Bears Investments | Interest | 3,600.00 |
| Capitol - BofA OPER 6842 | 1/31/2006 | Bears Investments | Interest | 4,109.33 |
| Capitol - BofA OPER 6842 | 1/31/2006 | Bears Investments | Interest | 4,262.67 |

EXHIBIT G

## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 1/31/2006 | Bears Investments | Interest | 4,324.00 |
| Capitol - BofA OPER 6842 | 1/31/2006 | Bears Investments | Interest | 4,385.33 |
| Capitol - BofA OPER 6842 | 1/31/2006 | Bears Investments | Interest | 4,385.33 |
| Capitol - BofA OPER 6842 | 1/31/2006 | Bears Investments | Interest | 4,600.00 |
| Capitol - BofA OPER 6842 | 1/31/2006 | Bears Investments | Interest | 4,600.01 |
| Capitol - BofA OPER 6842 | 2/7/2006 | Bears Investments | Interest | 3,500.00 |
| Capitol - BofA OPER 6842 | 2/7/2006 | Bears Investments | Interest | 3,600.00 |
| Capitol - BofA OPER 6842 | 2/13/2006 | Bears Investments | Interest | 3,500.00 |

EXHIBIT G

FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 2/13/2006 | Bears Investments | Interest | 3,600.00 |
| Capitol - BofA OPER 6842 | 2/13/2006 | Bears Investments | Principal | 225,000.00 |
| Capitol - BofA OPER 6842 | 2/13/2006 | Bears Investments | Principal | 240,000.00 |
| Capitol - BofA OPER 6842 | 2/15/2006 | Bears Investments | Interest | 3,852.50 |
| Capitol - BofA OPER 6842 | 2/15/2006 | Bears Investments | Interest | 3,996.25 |
| Capitol - BofA OPER 6842 | 2/15/2006 | Bears Investments | Interest | 4,053.75 |
| Capitol - BofA OPER 6842 | 2/15/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 2/15/2006 | Bears Investments | Interest | 4,111.25 |

EXHIBIT G
## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 2/15/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 2/15/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 2/28/2006 | Bears Investments | Interest | 3,338.83 |
| Capitol - BofA OPER 6842 | 2/28/2006 | Bears Investments | Interest | 3,463.42 |
| Capitol - BofA OPER 6842 | 2/28/2006 | Bears Investments | Interest | 3,513.25 |
| Capitol - BofA OPER 6842 | 2/28/2006 | Bears Investments | Interest | 3,563.08 |
| Capitol - BofA OPER 6842 | 2/28/2006 | Bears Investments | Interest | 3,563.08 |
| Capitol - BofA OPER 6842 | 2/28/2006 | Bears Investments | Interest | 3,737.50 |

EXHIBIT G

## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 2/28/2006 | Bears Investments | Interest | 3,737.51 |
| Capitol - BofA OPER 6842 | 2/28/2006 | Bears Investments | Interest | 7,000.00 |
| Capitol - BofA OPER 6842 | 3/7/2006 | Bears Investments | Interest | 7,000.00 |
| Capitol - BofA OPER 6842 | 3/14/2006 | Bears Investments | Interest | 7,000.00 |
| Capitol - BofA OPER 6842 | 3/15/2006 | Bears Investments | Interest | 3,852.50 |
| Capitol - BofA OPER 6842 | 3/15/2006 | Bears Investments | Interest | 3,996.25 |
| Capitol - BofA OPER 6842 | 3/15/2006 | Bears Investments | Interest | 4,053.75 |
| Capitol - BofA OPER 6842 | 3/15/2006 | Bears Investments | Interest | 4,111.25 |

EXHIBIT G
## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 3/15/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 3/15/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 3/15/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 3/21/2006 | Bears Investments | Interest | 7,000.00 |
| Capitol - BofA OPER 6842 | 3/29/2006 | Bears Investments | Interest | 7,000.00 |
| Capitol - BofA OPER 6842 | 3/31/2006 | Bears Investments | Interest | 4,109.33 |
| Capitol - BofA OPER 6842 | 3/31/2006 | Bears Investments | Interest | 4,262.67 |
| Capitol - BofA OPER 6842 | 3/31/2006 | Bears Investments | Interest | 4,324.00 |

EXHIBIT G
## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 3/31/2006 | Bears Investments | Interest | 4,385.33 |
| Capitol - BofA OPER 6842 | 3/31/2006 | Bears Investments | Interest | 4,385.34 |
| Capitol - BofA OPER 6842 | 3/31/2006 | Bears Investments | Interest | 4,600.00 |
| Capitol - BofA OPER 6842 | 3/31/2006 | Bears Investments | Interest | 4,600.00 |
| Capitol - BofA OPER 6842 | 4/6/2006 | Bears Investments | Interest | 7,000.00 |
| Capitol - BofA OPER 6842 | 4/12/2006 | Bears Investments | Interest | 7,000.00 |
| Capitol - BofA OPER 6842 | 4/14/2006 | Bears Investments | Interest | 3,852.50 |
| Capitol - BofA OPER 6842 | 4/14/2006 | Bears Investments | Interest | 3,996.25 |

EXHIBIT G
## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 4/14/2006 | Bears Investments | Interest | 4,053.75 |
| Capitol - BofA OPER 6842 | 4/14/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 4/14/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 4/14/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 4/14/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 4/24/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 4/28/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 5/1/2006 | Bears Investments | Interest | 3,852.50 |

EXHIBIT G
## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 5/1/2006 | Bears Investments | Interest | 3,996.25 |
| Capitol - BofA OPER 6842 | 5/1/2006 | Bears Investments | Interest | 4,053.75 |
| Capitol - BofA OPER 6842 | 5/1/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 5/1/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 5/1/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 5/1/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 5/5/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 5/15/2006 | Bears Investments | Interest | 3,852.50 |

EXHIBIT G

FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 5/15/2006 | Bears Investments | Interest | 3,996.25 |
| Capitol - BofA OPER 6842 | 5/15/2006 | Bears Investments | Interest | 4,053.75 |
| Capitol - BofA OPER 6842 | 5/15/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 5/15/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 5/15/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 5/15/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 5/15/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 5/22/2006 | Bears Investments | Interest | 5,000.00 |

EXHIBIT G

FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 5/30/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 5/31/2006 | Bears Investments | Interest | 4,109.33 |
| Capitol - BofA OPER 6842 | 5/31/2006 | Bears Investments | Interest | 4,262.67 |
| Capitol - BofA OPER 6842 | 5/31/2006 | Bears Investments | Interest | 4,324.00 |
| Capitol - BofA OPER 6842 | 5/31/2006 | Bears Investments | Interest | 4,385.33 |
| Capitol - BofA OPER 6842 | 5/31/2006 | Bears Investments | Interest | 4,385.34 |
| Capitol - BofA OPER 6842 | 5/31/2006 | Bears Investments | Interest | 4,600.00 |
| Capitol - BofA OPER 6842 | 5/31/2006 | Bears Investments | Interest | 4,600.00 |

EXHIBIT G
FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 6/2/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 6/12/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 6/15/2006 | Bears Investments | Interest | 3,852.50 |
| Capitol - BofA OPER 6842 | 6/15/2006 | Bears Investments | Interest | 3,996.25 |
| Capitol - BofA OPER 6842 | 6/15/2006 | Bears Investments | Interest | 4,053.75 |
| Capitol - BofA OPER 6842 | 6/15/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 6/15/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 6/15/2006 | Bears Investments | Interest | 4,312.50 |

EXHIBIT G
FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 6/15/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 6/20/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 6/27/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 7/3/2006 | Bears Investments | Interest | 3,852.50 |
| Capitol - BofA OPER 6842 | 7/3/2006 | Bears Investments | Interest | 3,996.25 |
| Capitol - BofA OPER 6842 | 7/3/2006 | Bears Investments | Interest | 4,053.75 |
| Capitol - BofA OPER 6842 | 7/3/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 7/3/2006 | Bears Investments | Interest | 4,111.25 |

EXHIBIT G
## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 7/3/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 7/3/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 7/3/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 7/10/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 7/10/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 7/17/2006 | Bears Investments | Interest | 3,852.50 |
| Capitol - BofA OPER 6842 | 7/17/2006 | Bears Investments | Interest | 3,996.25 |
| Capitol - BofA OPER 6842 | 7/17/2006 | Bears Investments | Interest | 4,053.75 |

EXHIBIT G
## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 7/17/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 7/17/2006 | Bears Investments | Interest | 4,111.25 |
| Capitol - BofA OPER 6842 | 7/17/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 7/17/2006 | Bears Investments | Interest | 4,312.50 |
| Capitol - BofA OPER 6842 | 7/17/2006 | Bears Investments | Interest | 7,500.00 |
| Capitol - BofA OPER 6842 | 7/17/2006 | Bears Investments | Principal | 230,000.00 |
| Capitol - BofA OPER 6842 | 7/24/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 7/27/2006 | Bears Investments | Interset | 2,500.00 |

EXHIBIT G

## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 7/27/2006 | Bears Investments | Principal | 250,000.00 |
| Capitol - BofA OPER 6842 | 7/31/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 8/1/2006 | Bears Investments | Interest | 4,109.33 |
| Capitol - BofA OPER 6842 | 8/1/2006 | Bears Investments | Interest | 4,262.67 |
| Capitol - BofA OPER 6842 | 8/1/2006 | Bears Investments | Interest | 4,324.00 |
| Capitol - BofA OPER 6842 | 8/1/2006 | Bears Investments | Interest | 4,385.33 |
| Capitol - BofA OPER 6842 | 8/1/2006 | Bears Investments | Interest | 4,385.33 |
| Capitol - BofA OPER 6842 | 8/1/2006 | Bears Investments | Interest | 4,600.00 |

EXHIBIT G

FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 8/1/2006 | Bears Investments | Interest | 4,600.01 |
| Capitol - BofA OPER 6842 | 8/7/2006 | Bears Investments | Interest | 4,000.00 |
| Capitol - BofA OPER 6842 | 8/7/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 8/7/2006 | Bears Investments | Principal | 250,000.00 |
| Capitol - BofA OPER 6842 | 8/14/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 8/15/2006 | Bears Investments | Interest | 28,650.00 |
| Capitol - BofA OPER 6842 | 8/21/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 8/22/2006 | Bears Investments | Interest | 3,200.00 |

EXHIBIT G

FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 8/22/2006 | Bears Investments | Principal | 275,000.00 |
| Capitol - BofA OPER 6842 | 8/28/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 8/29/2006 | Bears Investments | Interest | 30,666.67 |
| Capitol - BofA OPER 6842 | 9/6/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 9/11/2006 | Bears Investments | Interest | 5,000.00 |
| Capitol - BofA OPER 6842 | 9/15/2006 | Bears Investments | Interest | 28,750.00 |
| Capitol - BofA OPER 6842 | 9/15/2006 | Bears Investments | Principal | 275,000.00 |
| Capitol - BofA OPER 6842 | 9/18/2006 | Bears Investments | Interest | 5,000.00 |

EXHIBIT G

## FOUR-YEAR LOAN TRANSFERS

| TRANSFEROR | CLEAR DATE | TRANSFEREE | TYPE OF PAYMENT | AMOUNT OF TRANSFER |
|---|---|---|---|---|
| Capitol - BofA OPER 6842 | 10/24/2006 | Bears Investments c/o Loeb & Loeb Trust Account | Settlement Payment | 1,050,000.00 |
| | | | | $ 4,518,666.69 |

EXHIBIT H
BEARS USURIOUS LOAN TRANSFERS

| TRANSFEROR | TRANSFEREE | PAYMENT DATE | PRINCIPAL PAYMENTS | INTEREST PAYMENTS |
|---|---|---|---|---|
| Capitol Investments | Bears Investment Company | 11/30/2005 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 12/5/2005 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 12/8/2005 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 12/8/2005 | 235,000.00 | - |
| Capitol Investments | Bears Investment Company | 12/12/2005 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 12/12/2005 | 235,000.00 | - |
| Capitol Investments | Bears Investment Company | 12/15/2005 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 12/20/2005 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 12/28/2005 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | - | 4,109.33 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | - | 4,262.67 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | - | 4,324.00 |



EXHIBIT "H"

EXHIBIT H
BEARS USURIOUS LOAN TRANSFERS

| TRANSFEROR | TRANSFEREE | PAYMENT DATE | PRINCIPAL PAYMENTS | INTEREST PAYMENTS |
|---|---|---|---|---|
| Capitol Investments | Bears Investment Company | 12/30/2005 | - | 4,385.33 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | - | 4,385.34 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | - | 4,600.00 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | - | 4,600.00 |
| Capitol Investments | Bears Investment Company | 1/5/2006 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 1/10/2006 | - | 2,000.00 |
| Capitol Investments | Bears Investment Company | 1/10/2006 | 200,000.00 | - |
| Capitol Investments | Bears Investment Company | 1/13/2006 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 1/17/2006 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 1/17/2006 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 1/17/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 1/17/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 1/17/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 1/17/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 1/17/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 1/23/2006 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 1/24/2006 | - | 3,600.00 |
| Capitol Investments | Bears Investment Company | 1/24/2006 | 240,000.00 | - |
| Capitol Investments | Bears Investment Company | 1/30/2006 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 1/31/2006 | - | 3,600.00 |
| Capitol Investments | Bears Investment Company | 1/31/2006 | - | 4,109.33 |
| Capitol Investments | Bears Investment Company | 1/31/2006 | - | 4,262.67 |
| Capitol Investments | Bears Investment Company | 1/31/2006 | - | 4,324.00 |

EXHIBIT H

BEARS USURIOUS LOAN TRANSFERS

| TRANSFEROR | TRANSFEREE | PAYMENT DATE | PRINCIPAL PAYMENTS | INTEREST PAYMENTS |
|---|---|---|---|---|
| Capitol Investments | Bears Investment Company | 1/31/2006 | - | 4,385.33 |
| Capitol Investments | Bears Investment Company | 1/31/2006 | - | 4,385.33 |
| Capitol Investments | Bears Investment Company | 1/31/2006 | - | 4,600.00 |
| Capitol Investments | Bears Investment Company | 1/31/2006 | - | 4,600.01 |
| Capitol Investments | Bears Investment Company | 2/7/2006 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 2/7/2006 | - | 3,600.00 |
| Capitol Investments | Bears Investment Company | 2/13/2006 | - | 3,500.00 |
| Capitol Investments | Bears Investment Company | 2/13/2006 | - | 3,600.00 |
| Capitol Investments | Bears Investment Company | 2/13/2006 | 225,000.00 | - |
| Capitol Investments | Bears Investment Company | 2/13/2006 | 240,000.00 | - |
| Capitol Investments | Bears Investment Company | 2/15/2006 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 2/15/2006 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 2/15/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 2/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 2/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 2/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 2/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 2/28/2006 | - | 3,338.83 |
| Capitol Investments | Bears Investment Company | 2/28/2006 | - | 3,463.42 |
| Capitol Investments | Bears Investment Company | 2/28/2006 | - | 3,513.25 |
| Capitol Investments | Bears Investment Company | 2/28/2006 | - | 3,563.08 |
| Capitol Investments | Bears Investment Company | 2/28/2006 | - | 3,563.08 |
| Capitol Investments | Bears Investment Company | 2/28/2006 | - | 3,737.50 |

EXHIBIT H
BEARS USURIOUS LOAN TRANSFERS

| TRANSFEROR | TRANSFEREE | PAYMENT DATE | PRINCIPAL PAYMENTS | INTEREST PAYMENTS |
|---|---|---|---|---|
| Capitol Investments | Bears Investment Company | 2/28/2006 | - | 3,737.51 |
| Capitol Investments | Bears Investment Company | 2/28/2006 | - | 7,000.00 |
| Capitol Investments | Bears Investment Company | 3/7/2006 | - | 7,000.00 |
| Capitol Investments | Bears Investment Company | 3/14/2006 | - | 7,000.00 |
| Capitol Investments | Bears Investment Company | 3/15/2006 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 3/15/2006 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 3/15/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 3/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 3/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 3/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 3/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 3/21/2006 | - | 7,000.00 |
| Capitol Investments | Bears Investment Company | 3/29/2006 | - | 7,000.00 |
| Capitol Investments | Bears Investment Company | 3/31/2006 | - | 4,109.33 |
| Capitol Investments | Bears Investment Company | 3/31/2006 | - | 4,262.67 |
| Capitol Investments | Bears Investment Company | 3/31/2006 | - | 4,324.00 |
| Capitol Investments | Bears Investment Company | 3/31/2006 | - | 4,385.33 |
| Capitol Investments | Bears Investment Company | 3/31/2006 | - | 4,385.34 |
| Capitol Investments | Bears Investment Company | 3/31/2006 | - | 4,600.00 |
| Capitol Investments | Bears Investment Company | 3/31/2006 | - | 4,600.00 |
| Capitol Investments | Bears Investment Company | 4/6/2006 | - | 7,000.00 |
| Capitol Investments | Bears Investment Company | 4/12/2006 | - | 7,000.00 |
| Capitol Investments | Bears Investment Company | 4/14/2006 | - | 3,852.50 |

EXHIBIT H
BEARS USURIOUS LOAN TRANSFERS

| TRANSFEROR | TRANSFEREE | PAYMENT DATE | PRINCIPAL PAYMENTS | INTEREST PAYMENTS |
|---|---|---|---|---|
| Capitol Investments | Bears Investment Company | 4/14/2006 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 4/14/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 4/14/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 4/14/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 4/14/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 4/14/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 4/24/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 4/28/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 5/1/2006 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 5/1/2006 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 5/1/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 5/1/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 5/1/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 5/1/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 5/1/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 5/5/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 5/15/2006 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 5/15/2006 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 5/15/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 5/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 5/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 5/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 5/15/2006 | - | 4,312.50 |

EXHIBIT H
BEARS USURIOUS LOAN TRANSFERS

| TRANSFEROR | TRANSFEREE | PAYMENT DATE | PRINCIPAL PAYMENTS | INTEREST PAYMENTS |
|---|---|---|---|---|
| Capitol Investments | Bears Investment Company | 5/15/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 5/22/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 5/30/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 5/31/2006 | - | 4,109.33 |
| Capitol Investments | Bears Investment Company | 5/31/2006 | - | 4,262.67 |
| Capitol Investments | Bears Investment Company | 5/31/2006 | - | 4,324.00 |
| Capitol Investments | Bears Investment Company | 5/31/2006 | - | 4,385.33 |
| Capitol Investments | Bears Investment Company | 5/31/2006 | - | 4,385.34 |
| Capitol Investments | Bears Investment Company | 5/31/2006 | - | 4,600.00 |
| Capitol Investments | Bears Investment Company | 5/31/2006 | - | 4,600.00 |
| Capitol Investments | Bears Investment Company | 6/2/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 6/12/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 6/15/2006 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 6/15/2006 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 6/15/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 6/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 6/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 6/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 6/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 6/20/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 6/27/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 7/3/2006 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 7/3/2006 | - | 3,996.25 |

EXHIBIT H
BEARS USURIOUS LOAN TRANSFERS

| TRANSFEROR | TRANSFEREE | PAYMENT DATE | PRINCIPAL PAYMENTS | INTEREST PAYMENTS |
|---|---|---|---|---|
| Capitol Investments | Bears Investment Company | 7/3/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 7/3/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 7/3/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 7/3/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 7/3/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 7/3/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 7/10/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 7/10/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 7/17/2006 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 7/17/2006 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 7/17/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 7/17/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 7/17/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 7/17/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 7/17/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 7/17/2006 | - | 7,500.00 |
| Capitol Investments | Bears Investment Company | 7/17/2006 | 230,000.00 | - |
| Capitol Investments | Bears Investment Company | 7/24/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 7/27/2006 | - | 2,500.00 |
| Capitol Investments | Bears Investment Company | 7/27/2006 | 250,000.00 | - |
| Capitol Investments | Bears Investment Company | 7/31/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 8/1/2006 | - | 4,109.33 |
| Capitol Investments | Bears Investment Company | 8/1/2006 | - | 4,262.67 |

EXHIBIT H
BEARS USURIOUS LOAN TRANSFERS

| TRANSFEROR | TRANSFEREE | PAYMENT DATE | PRINCIPAL PAYMENTS | INTEREST PAYMENTS |
|---|---|---|---|---|
| Capitol Investments | Bears Investment Company | 8/1/2006 | - | 4,324.00 |
| Capitol Investments | Bears Investment Company | 8/1/2006 | - | 4,385.33 |
| Capitol Investments | Bears Investment Company | 8/1/2006 | - | 4,385.33 |
| Capitol Investments | Bears Investment Company | 8/1/2006 | - | 4,600.00 |
| Capitol Investments | Bears Investment Company | 8/1/2006 | - | 4,600.01 |
| Capitol Investments | Bears Investment Company | 8/7/2006 | - | 4,000.00 |
| Capitol Investments | Bears Investment Company | 8/7/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 8/7/2006 | 250,000.00 | - |
| Capitol Investments | Bears Investment Company | 8/14/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 8/15/2006 | - | (100.00) |
| Capitol Investments | Bears Investment Company | 8/15/2006 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 8/15/2006 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 8/15/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 8/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 8/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 8/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 8/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 8/21/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 8/22/2006 | - | 3,200.00 |
| Capitol Investments | Bears Investment Company | 8/22/2006 | 275,000.00 | - |
| Capitol Investments | Bears Investment Company | 8/28/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 8/29/2006 | - | 4,109.33 |
| Capitol Investments | Bears Investment Company | 8/29/2006 | - | 4,262.67 |

EXHIBIT H

BEARS USURIOUS LOAN TRANSFERS

| TRANSFEROR | TRANSFEREE | PAYMENT DATE | PRINCIPAL PAYMENTS | INTEREST PAYMENTS |
|---|---|---|---|---|
| Capitol Investments | Bears Investment Company | 8/29/2006 | - | 4,324.00 |
| Capitol Investments | Bears Investment Company | 8/29/2006 | - | 4,385.33 |
| Capitol Investments | Bears Investment Company | 8/29/2006 | - | 4,385.33 |
| Capitol Investments | Bears Investment Company | 8/29/2006 | - | 4,600.00 |
| Capitol Investments | Bears Investment Company | 8/29/2006 | - | 4,600.01 |
| Capitol Investments | Bears Investment Company | 9/6/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 9/11/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 9/15/2006 | - | 3,852.50 |
| Capitol Investments | Bears Investment Company | 9/15/2006 | - | 3,996.25 |
| Capitol Investments | Bears Investment Company | 9/15/2006 | - | 4,053.75 |
| Capitol Investments | Bears Investment Company | 9/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 9/15/2006 | - | 4,111.25 |
| Capitol Investments | Bears Investment Company | 9/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 9/15/2006 | - | 4,312.50 |
| Capitol Investments | Bears Investment Company | 9/15/2006 | - | 5,000.00 |
| Capitol Investments | Bears Investment Company | 9/15/2006 | 270,000.00 | - |
| Capitol Investments | Bears Investment Company | 9/18/2006 | - | 5,000.00 |
| | | **TOTALS** | **2,650,000.00** | **818,666.69** |
| | | | $ | **3,468,666.69** |

EXHIBIT I

## BEARS USURIOUS LOANS

| Debtor | Lending Entity | Date Funded | Amount of Loan | Term of Loan (days) | Interest rate | Principal Repaid | Interest paid | Total Amount Repaid | Date Repaid |
|--------|----------------|-------------|----------------|---------------------|---------------|------------------|---------------|---------------------|-------------|
| Capitol | Bears Investments | 9/30/2003 | 360,000.00 | 1120 | 36% | Principal repaid prior to 4-Year period | 78,077.31 | 78,077.31 | 10/24/2006 |
| Capitol | Bears Investments | 9/30/2003 | 278,000.00 | 1120 | 36% | Resolved through Settlement Agreement | 80,990.69 | 80,990.69 | 10/24/2006 |
| Capitol | Bears Investments | 9/30/2003 | 300,000.00 | 1120 | 34% | Resolved through Settlement Agreement | 82,673.50 | 82,673.50 | 10/24/2006 |
| Capitol | Bears Investments | 9/30/2003 | 282,000.00 | 1120 | 36% | Resolved through Settlement Agreement | 83,206.31 | 83,206.31 | 10/24/2006 |
| Capitol | Bears Investments | 9/30/2003 | 286,000.00 | 1120 | 36% | Resolved through Settlement Agreement | 83,321.34 | 83,321.34 | 10/24/2006 |
| Capitol | Bears Investments | 9/30/2003 | 286,000.00 | 1120 | 37% | Resolved through Settlement Agreement | 86,997.50 | 86,997.50 | 10/24/2006 |
| Capitol | Bears Investments | 10/23/2003 | 300,000.00 | 1097 | 36% | Resolved through Settlement Agreement | 87,300.04 | 87,300.04 | 10/24/2006 |
| Capitol | Bears Investments | 10/25/2005 | 225,000.00 | 111 | 46% | 225,000.00 | 31,500.00 | 256,500.00 | 2/13/2006 |
| Capitol | Bears Investments | 12/6/2005 | 235,000.00 | 2 | 272% | 235,000.00 | 3,500.00 | 238,500.00 | 12/8/2005 |



EXHIBIT I

## BEARS USURIOUS LOANS

| Debtor | Lending Entity | Date Funded | Amount of Loan | Term of Loan (days) | Interest rate | Principal Repaid | Interest paid | Total Amount Repaid | Date Repaid |
|--------|----------------|-------------|----------------|---------------------|---------------|------------------|---------------|---------------------|-------------|
| Capitol | Bears Investments | 12/8/2005 | 235,000.00 | 4 | 136% | 235,000.00 | 3,500.00 | 238,500.00 | 12/12/2005 |
| Capitol | Bears Investments | 1/5/2006 | 200,000.00 | 5 | 73% | 200,000.00 | 2,000.00 | 202,000.00 | 1/10/2006 |
| Capitol | Bears Investments | 1/17/2006 | 240,000.00 | 7 | 78% | 240,000.00 | 3,600.00 | 243,600.00 | 1/24/2006 |
| Capitol | Bears Investments | 1/24/2006 | 240,000.00 | 20 | 82% | 240,000.00 | 10,800.00 | 250,800.00 | 2/13/2006 |
| Capitol | Bears Investments | 2/22/2006 | 460,000.00 | 244 | 61% | - | 159,000.00 | 159,000.00 | 10/24/2006 |
| Capitol | Bears Investments | 7/3/2006 | 230,000.00 | 14 | 85% | 230,000.00 | 7,500.00 | 237,500.00 | 7/17/2006 |
| Capitol | Bears Investments | 7/25/2006 | 250,000.00 | 2 | 183% | 250,000.00 | 2,500.00 | 252,500.00 | 7/27/2006 |
| Capitol | Bears Investments | 7/27/2006 | 250,000.00 | 11 | 53% | 250,000.00 | 4,000.00 | 254,000.00 | 8/7/2006 |
| Capitol | Bears Investments | 8/14/2006 | 275,000.00 | 8 | 53% | 275,000.00 | 3,200.00 | 278,200.00 | 8/22/2006 |
| Capitol | Bears Investments | 8/31/2006 | 270,000.00 | 15 | 45% | 270,000.00 | 5,000.00 | 275,000.00 | 9/15/2006 |
| | | | | | | $ 2,650,000.00 | $ 818,666.69 | $ 3,468,666.69 | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is made and entered into as of the _____ day of October 2006, by and among BEARS INVESTMENT COMPANY ("BIC"), ROBERT KALLMAN ("Kallman"), CAPITOL INVESTMENTS USA, INC., a Florida corporation ("Capitol") and NEVIN K. SHAPIRO ("Shapiro").

### I.    RECITALS

A.    On or about February 11, 2002, BIC and Capitol entered into an agreement (as amended, the "LOC Agreement"), pursuant to which BIC agreed, among other services, to provide Capitol with certain financial accommodations.

B.    Concurrently with the execution and delivery of the LOC Agreement, BIC and Capitol entered into a certain Non-Circumvention & Non-Disclosure Agreement (as amended, the "NCND Agreement") pursuant to which, among other things, BIC agreed to not interfere with or utilize any business relationships of Capitol.

C.    On or about June 10, 2002, Capitol executed and delivered a certain Security Agreement (as amended, the "Security Agreement") to and in favor of BIC, pursuant to which Capitol granted to BIC a security interest in the collateral of Capitol to secure the financial accommodations extended under the LOC Agreement, and, in order to perfect such security interest, BIC filed a UCC-1 Financing Statement (the "UCC-1") with the Florida Secured Transaction Registry on October 18, 2002 as Filing Number 200202437262.

D.    As of the date hereof, the principal amount of $2,000,000 is outstanding and due and owing by Capitol to BIC under the LOC Agreement, together with accrued and unpaid interest thereon from September 1, 2006.

E.    Disputes have arisen between Capitol and BIC in respect of the parties' respective obligations under the LOC Agreement and the NCND Agreement.

F.    BIC, Kallman, Capitol and Shapiro wish now fully to forever resolve and compromise all disputes, claims, and potential claims between and among them, arising from or related to the LOC Agreement and the NCND Agreement and/or otherwise at law or in equity for the consideration and in accordance with the terms and conditions set forth in this Agreement, without admission of liability or fault and solely to avoid the uncertainties and expenses associated with litigation.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements contained herein and for other good and valuable consideration, the

EXHIBIT
"J"

BIC-00010

receipt and sufficiency of which is hereby acknowledged, BIC, Kallman, Capitol and Shapiro, intending to be legally bound hereby, agree as follows:

## II.   SETTLEMENT TERMS

A.   BIC hereby forgives the amount of and reduces the indebtedness of Capitol due to BIC under the LOC Agreement by (i) the principal amount of $950,000.00 and (ii) the interest due and owing under the LOC Agreement for the period from September 1, 2006 through October 31, 2006 (the "Forgiveness of Debt"). After giving effect to the Forgiveness of Debt, the principal amount of $1,050,000.00 shall be due and owing by Capitol to BIC. Capitol hereby irrevocably and unconditionally agrees to pay BIC the principal amount of $1,050,000.00 on or before November 1, 2006, time being of the essence, by wire transfer to BIC's counsel (pursuant to instructions set forth on Schedule A hereto), without offset, defense, set-off or counterclaim of any kind, nature or description whatsoever. Should Capitol fail to pay BIC the full principal amount of $1,050,000.00 on or before November 1, 2006, interest shall accrue and be payable on such unpaid amount at a rate of interest equal to twenty-five percent (25%) per annum, but in no event in excess of the maximum rate permitted by law.

B.   All other obligations of the parties arising under or related to the LOC Agreement, and the LOC Agreement itself, are hereby terminated and are of no further force or effect.

C.   The NCND Agreement is hereby terminated in its entirety, and all of the promises, covenants and obligations of the parties thereto shall terminate and be of no further force or effect.

D.   Upon the full and indefeasible payment of all amounts due to BIC as provided in Paragraph A of this Article II, BIC will release and terminate the UCC-1, and upon such release and termination, the Security Agreement will be deemed terminated and of no further force or effect. In furtherance of the foregoing, BIC will cause its counsel to prepare and file any required termination of the UCC-1 and BIC will execute same if required.

E.   To induce BIC to enter into this Agreement and to provide the Forgiveness of Debt, Shapiro hereby irrevocably and unconditionally guarantees to BIC the full and timely payment of all amounts due and owing by Capitol to BIC under Paragraph A of this Article II and otherwise under this Agreement on the part of Capitol to be paid, without offset, defense, set-off, counterclaim, notice or demand of any kind, nature or description and howsoever arising.

BIC-00011

## III.    RELEASES

A.    In consideration of the recitals, mutual covenants, representations, warranties, releases, performances and other agreements contained or provided for in this Agreement, and for such other and further consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, BIC, Kallman, Capitol and Shapiro further agree as follows:

(i)    Capitol and Shapiro, individually and collectively, jointly and severally, hereby completely and generally release and forever discharge BIC and Kallman, and each of its and his parent, affiliated and subsidiary corporations, companies, partnerships, limited partnerships, joint ventures, and the partners, limited partners, members, managers, shareholders, officers, directors, employees, agents, attorneys, and representatives, and the successors and assigns of each of them (collectively, the "Kallman Entities"), or any of them, of and from any and all past, present and future claims, demands, obligations, actions, causes of action, rights, damages, expenses, fees, attorney's fees, and requests or demands for compensation or payment of any nature whatsoever, whether based on tort, contract, or any other theory of recovery, including negligence and/or fraud, and whether for compensatory, consequential or punitive damages or other relief or remedy, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, whether direct or indirect or third party or derivative, whether fixed or contingent, and whether secured or unsecured, which Capitol and/or Shapiro, and each of its and his parent, affiliated and subsidiary corporations and companies, partnerships, limited partnerships, joint ventures and the partners, limited partners, members, managers, shareholders, officers, directors, employees, agents, attorneys and representatives, and the successors and assigns of each of them (collectively, the "Shapiro Entities"), individually and collectively ever had or now has or will or may have against the Kallman Entities, or any of them, for, upon, or by reason, directly or indirectly, of any matter, cause, or thing whatsoever (excluding breach of this Agreement), arising out of, related to, or in connection with the LOC Agreement, the NCND Agreement, the Security Agreement or the relationship and/or dealings of the parties relating thereto or otherwise at law or in equity, from the date of the beginning of the world to the date hereof, all to the fullest extent allowed by United States federal, state or local law and the national or local law of any foreign country (statutory or decisional).

(ii)    Upon the full and indefeasible payment of the amounts due and owing to BIC under Paragraph A of Article II of this Agreement, the Kallman Entities, individually and collectively, jointly and severally, hereby completely and generally release and forever discharge the Shapiro Entities, or any of them, of and from any and all past, present and future claims, demands, obligations, actions, causes of action, rights, damages, expenses, and requests or demands for compensation or payment of any nature whatsoever, whether based on tort, contract, or any other theory of recovery, including negligence and/or fraud, and whether for compensatory, consequential or punitive damages or other relief or remedy, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, whether

NY535601.1
01024000070

3

BIC-00012

direct or indirect or third party or derivative, whether fixed or contingent, and whether secured or unsecured, which the Kallman Entities individually and collectively ever had or now has or will or may have against the Shapiro Entities, or any of them, for, upon, or by reason, directly or indirectly, of any matter, cause, or thing whatsoever (excluding breach of this Agreement), arising out of, related to, or in connection with the LOC Agreement, the NCND Agreement, the Security Agreement or the relationship and/or dealings of the parties related thereto or otherwise at law or in equity, from the date of the beginning of the world to the date hereof, all to the fullest extent allowed by United States federal, state or local law and the national or local law of any foreign country (statutory or decisional).

B.    Notwithstanding anything herein to the contrary, nothing herein shall constitute, or be deemed to be, a release or discharge of Craigco, Inc. ("Craigco") or Craig T. Currie ("Currie") of the indebtedness evidenced by the Promissory Note (the "Currie Note") dated of even date herewith in the principal amount of $510,000.00, which was formerly an obligation of Capitol to BIC, but which obligations have been assumed in total and for all purposes by Craigco and Currie.

C.    Each party hereto agrees and accepts the consideration provided for herein as a satisfactory compromise of matters involving disputed issues of law and fact, and the parties hereto fully assume the risk that the facts and the law may be otherwise than each of them believes.

### IV.    COVENANT NOT TO SUE

A.    The parties hereto agree, promise, and covenant not to file, join, or continue to prosecute any claims, demands, obligations, actions, causes of action, third-party actions, rights, damages, expenses, or requests for compensation or payment of any nature whatsoever, released or intended to be released pursuant to this Agreement, except to enforce the terms hereof.

### V.    MISCELLANEOUS

A.    Each party hereto represents and warrants that it has full authority to enter into this Agreement on behalf of that party and the authority and capacity to bind that party hereto as well as and on behalf of those for whom they sign and that (i) they have obtained all necessary approvals, consents, and authorizations to enter into this Agreement and to perform and carry out its obligations hereunder; (ii) the persons executing this Agreement on behalf of each party has express authority to do so, and, in so doing, to bind the party they purport to represent; (iii) the execution, delivery, and performance of this Agreement does not violate any provision of any bylaw, charter, regulation, or any other governing authority of any corporate parties hereto; (iv) the execution, delivery, and performance of this Agreement has been duly authorized by all necessary partnership and

BIC-00013

corporate action of the corporate and partnership parties; and (v) this Agreement is a valid and binding obligation of each party, enforceable in accordance with its terms.

B.  Each party hereto shall bear its own respective legal and other costs to date, and the costs of proceedings, disputes, negotiations, and any other costs relating to or in connection with the subject matter or the negotiation of this Agreement, and the matters and documents referred to herein, including the matters released herein.

C.  The parties hereto agree and acknowledge that this Agreement and all actions taken pursuant to it are done and accepted as a full and complete compromise of disputed claims and issues and specifically deny all liability for such claims; that neither this Agreement nor any actions undertaken in connection therewith by the parties hereto, their attorneys, or representatives shall be considered admissions by any of said parties; and that no past or present wrongdoing, fault, or failure on the part of any party hereto or its or their representatives, agents, or employees, or of any person or any entity acting or purporting to act by, through or on its behalf, shall be implied or inferred from such matters or such actions. Neither this Agreement nor any of its terms shall be offered or received in evidence in any proceeding or utilized in any manner whatsoever; provided, however, that nothing contained in this Paragraph shall prevent this Agreement from being used, offered, or received into evidence in any proceeding to approve, enforce, or otherwise effectuate this Agreement. It is agreed that no rule of construction shall apply against any party or in favor of any party hereto. This Agreement shall be construed as if the parties hereto jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

D.  In entering into this Agreement, each party hereto represents that they have read this Agreement and that the terms of the Agreement are fully understood and voluntarily accepted.

E.  As expressly provided herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their legal representatives, successors (by purchase, assignment, foreclosure, or whatever means), heirs and assigns.

F.  This Agreement contains the entire agreement between the parties hereto with regard to the matters set forth herein, and cancels and supersedes all prior representations, negotiations, proposals, commitments, writings, publications and understandings of any nature whatsoever concerning this subject matter, if any. THERE ARE NO OTHER PROMISES, UNDERSTANDINGS, REPRESENTATIONS, WARRANTIES, COVENANTS, OR AGREEMENTS, VERBAL OR OTHERWISE, IN

BIC-00014

RELATION THERETO BETWEEN THE PARTIES, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT.

G.    The provisions of this Agreement may be changed, waived, modified, varied or terminated only by written agreement signed by all of the parties hereto.

H.    This Agreement may be executed in multiple counterparts (with certain Parties signing certain counterparts and other parties signing other counterparts) including facsimile counterparts, each of which shall be deemed an original, or with detachable signature pages, which shall be construed together and shall be effective as if all executed in one, unified document. When all counterparts of this Agreement have been signed by all parties, it shall constitute a binding agreement.

I.    If any of the provisions of this Agreement shall be adjudged to be invalid or unenforceable under applicable law, such invalidity or unenforceability shall not invalidate or render this Agreement and its remaining provisions unenforceable, provided however, if for any reason whatsoever the Release provided by the Shapiro Entities is adjudged to be invalid and unenforceable, then the Forgiveness of Debt provided in Paragraph A of Article II hereof shall be null and void ab initio and Capitol shall remain obligated to BIC for the amounts which would otherwise have been forgiven thereunder, which amounts shall become immediately due and payable to BIC and continue to be secured under the Security Agreement, notwithstanding any provision herein to the contrary.

J.    The Parties agree to cooperate and use their best efforts to consummate the transactions described in this Agreement and to take all actions necessary to effectuate the compromise and settlement set forth herein.

K.    Should any party hereto be forced to bring an action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party(s) reasonable attorney's fees and expenses incurred by the prevailing party therein.

L.    Each of the undersigned individuals signing below represents and warrants that he or she is fully authorized to execute this Agreement and to enter into the terms and conditions hereof on behalf of the party on whose behalf each such individual has executed this Agreement.

M.    Capitol and Shapiro shall be solely responsible for payment of any and all documentary stamps and other taxes applicable to the obligations set forth in Article II of this Agreement.

N.    As to the obligations of Capitol and Shapiro under this Agreement, Capitol and Shapiro jointly and severally waive all applicable exemption rights, whether under the state Constitution, Homestead laws or otherwise, and

BIC-00015

also severally waive, valuation and appraisement, presentment for payment, protest, notice of protest, dishonor and nonpayment of such obligations, and expressly agree that any payment hereunder may be extended from time without in any way affecting the liability of Capitol and/or Shapiro.

O.   Any delay by BIC in exercising any right or remedy shall not constitute a waiver thereof. No waiver by BIC of any default hereunder shall be deemed to constitute a waiver of any subsequent default. No exercise of any right or remedy hereunder shall preclude the exercise of any other right or remedy which BIC may have in law or in equity to enforce the provisions of this Agreement or the collection of any amounts due BIC hereunder.

P.   Any notice, demand, request, instruction, correspondence or other document to be given hereunder shall be in writing and delivered personally or mailed by registered or certified mail, postage prepaid and return receipt requested, or by facsimile, as follows:

If to Shapiro or Capitol:     400 41st Street, #506
                              Miami Beach, Florida 33140
                              Phone: (305) 673-4606
                              Fax:   (305) 673-4607

If to BIC or Kallman:         c/o Scott I. Schneider, Esq.
                              Loeb & Loeb, LLP
                              345 Park Avenue,
                              New York, New York 10154
                              Phone: (212) 407-4078
                              Fax:   (212) 202-7816

Each of the above addresses for notice purposes may be changed by providing appropriate notice hereunder. Notice shall be effective upon receipt evidenced by the applicable delivery receipt, written affidavit of the deliverer, or facsimile confirmation.

Q.   This Agreement and any documents delivered pursuant hereto shall be governed by and construed in all respects, including validity, interpretation, effect, and enforcement, in accordance with the laws of the State of Florida without regard to conflict of law principles thereof. Capitol and Shapiro, and each of them irrevocably submit to the jurisdiction of the Circuit Court of the State of Florida, Miami-Dade County, in any action or proceeding arising out of or relating to this Agreement, or any documents delivered pursuant hereto, and Capitol and Shapiro, and each of them, irrevocably agree that all claims in respect of any such action or proceeding must be brought and/or defended in such court; provided, however, that matters which are under the exclusive jurisdiction of the Federal courts shall be brought in the Federal District

BIC-00016

Court for the Southern District of Florida. Capitol and Shapiro, consent to service of process by any means authorized by the applicable law of the forum in any action brought under or arising out of this Agreement or any documents delivered pursuant hereto. Capitol and Shapiro, and each of them, irrevocably waive, to the fullest extent each may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. THE PARTIES HERETO, AND EACH OF THEM, HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT THEY MAY LEGALLY AND EFFECTIVELY DO SO, TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING ARISING HEREUNDER.

| BEARS INVESTMENT COMPANY | Witnessed By: |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: Robert KALLMAN | Name: HAROLD JAMES AXELROD |
| (Type/Print) | |
| Title: PRESIDENT | Date: |
| Date: | |

| | Witnessed By: |
|---|---|
| _[signature]_ | By: _[signature]_ |
| ROBERT KALLMAN | Name: HAROLD JAMES AXELROD |
| Date: | Date: |

BIC-00018

| CAPITOL INVESTMENTS USA, INC. | Witnessed By: |
|---|---|
| By: | By: |
| Name: Nevin K. Shapiro | Name: Evelyn Mortel |
| (Type/Print) | |
| Title: President | |
| Date: October 20, 2006 | Date: 10/20/06 |

| | Witnessed By: |
|---|---|
| | By: |
| | Name: MARIA E. VALDES |
| NEVIN K. SHAPIRO | |
| Date: October 20, 2006 | Date: 10/20/06 |

NY535601.1
01024000070

10

BIC-00019

## SCHEDULE A

CITIBANK, N.A.
153 EAST 53RD STREET
NEW YORK, NEW YORK 10022
ATTN: SCOTT I. SCHNEIDER

LOEB & LOEB LLP TRUST ACCOUNT
ACCOUNT # 24576266
ABA # 021000089
SWIFT CODE: CITI US 33

NY535601.1
01024000070

11

BIC-00020

State of Florida:
County of Miami-Dade:

## Affidavit of Fanny Gallo

**Before Me,** the undersigned authority, personally appeared Fanny Gallo, who after being first duly sworn, deposes and says that she has knowledge of the facts contained within this affidavit and knows them to be true and says:



1. My name is Fanny Gallo, I am an adult and otherwise sui juris.



2. I am a resident of the State of Florida and live in Broward County;



3. Since Christmas 2006 to the present time Mr. Robert Kallman has shown up at my home uninvited on no less than four (4) occasions attempting to engage me in conversation about my husband, Craig Currie, and Nevin Shapiro;



4. For the past eight (8) weeks or so he has been calling my cellular telephone on an almost-daily basis with calls on some days amounting to no less than ten (10) calls in a 24-hour period;



5. I have cellular telephone bills to substantiate his repeated calls to me;



6. In his conversations with me on the telephone and at my house, he is continually trying to get me to admit that my husband, Craig Currie, and Nevin Shapiro ripped him [Kallman] off; took money from him [Kallman]; and stole from him [Kallman];



7. Mr. Kallman has made frequent threats to go to the prosecutor's office and that he knows a lot of prosecutors;



8. Mr. Kallman has told me "I will crush Nevin's balls";

9. Mr. Kallman has told me that he can help me and he doesn't want to see me go to jail, if only I will admit to him that my husband, Craig Currie, and Nevin Shapiro "ripped him [Kallman] off";

Capitol/LewisTein004247



EXHIBIT
"K"

 10.  Mr. Kallman has asked me to admit to him that I've overheard business conversations between my husband, Craig Currie, and Nevin Shapiro and to tell him the nature of those conversations;

 11.  I have told Mr. Kallman time and again that he is suing myself and my husband and he should not be talking to me directly and should be going only through our attorneys;

 12.  Mr. Kallman has approached me about signing an affidavit for him behind my husband, Craig Currie's back.  I have told him I will not do that and will sign nothing without our attorney reviewing it first;

 13.  Mr. Kallman is continually attempting to get me to admit that my husband, Craig Currie and Nevin Shapiro have off-shore accounts;  and

 14.  I do not believe and have no knowledge of my husband, Craig Currie and/or Nevin Shapiro ever conspiring, together or individually, at any time to steal from Mr. Kallman.

Further Affiant Sayeth Not.

X _Fanny el Gallo_.
_____
       Signature of Affiant

Sworn to and subscribed before me this _10th_ day of May 2007 by Fanny Gallo who is personally known to me and did take an oath.

_____
       Notary Public

Patrick M. Franklin
Commission # DD452987
Expires September 1, 2009
Bonded Troy Fain - Insurance, Inc. 800-385-7019

Capitol/LewisTein004248

State of Florida:
County of Miami-Dade:

### Affidavit of Craig Currie

**Before Me,** the undersigned authority, personally appeared Craig Currie, who after being first duly sworn, deposes and says that he has knowledge of the facts contained within this affidavit and knows them to be true and says:

1. My name is Craig Currie, I am an adult and otherwise sui juris.

2. I am a resident of the State of New Jersey.

3. Over the past year Mr. Robert Kallman has been calling me on an almost-daily basis, no less than twenty (20) times a day on some occasions. I have the telephone bills to substantiate this;

4. Every telephone conversation contains some mention of Nevin Shapiro and Kallman asking me to help him "get Nevin";

5. During these conversations Mr. Kallman is continually threatening to go to the District Attorney's Office and offers to help me if I will only admit to him that I conspired with Nevin Shapiro to "rip him [Kallman] off"; and

6. At no time was there ever a conspiracy between myself and Nevin Shapiro to steal from Mr. Kallman.

Further Affiant Sayeth Not.

_____
Signature of Affiant

Sworn to and subscribed before me this 10th day of May 2007 by Craig Currie who is personally known to me and did take an oath.

_____
Notary Public

**Patrick M. Franklin**
Commission # DD452987
Expires September 1, 2009
Bonded Troy Fain - Insurance, Inc. 800-385-7019

Capitol/LewisTein004249

**AFFIDAVIT**

STATE OF NEW ~~JERSEY~~) Florida

COUNTY OF __Dade__ ) ss.
)

Under the penalties of perjury, the undersigned, Ms. Fanny Gallo, certifies that the statements set forth in this instrument are true and correct:

1.    I am the President of Gallo Imports LLC.

2.    My husband is Craig T. Currie.

3.    I hereby certify that any payments made or to be made to Nevin K. Shapiro and/or Capitol Investments USA, Inc. by Gallo Imports LLC on behalf of Craig T. Currie, Craigco, Inc. and/or China Glass USA, Inc. have been properly authorized by the company.

4.    The statement set forth in this affidavit is within my personal knowledge and I believe the information herein stated is true and correct to the best of my knowledge, information, and belief.

FURTHER AFFIANT SAITH NAUGHT.

_Fanny Gallo_
Fanny Gallo

Subscribed and sworn to before me, a notary public, this _14th_ day of _Nov._, 2006.

_Otilio Cardona_
NOTARY PUBLIC

My Commission Expires:

OTILIO CARDONA
MY COMMISSION # DD 517626
EXPIRES: May 13, 2010
Bonded Thru Budget Notary Services

**EXHIBIT L**

**FALSE PROFIT TRANSFERS**

| TRANSFEROR | TRANSFEREE | DATE OF TRANSFER | INTEREST PAID |
|---|---|---|---|
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 12/05/2005 | 3,500.00 |
| Capitol Investments | Bears Investment Company | 12/08/2005 | 3,500.00 |
| Capitol Investments | Bears Investment Company | 12/13/2005 | 3,500.00 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 12/15/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 12/20/2005 | 3,500.00 |
| Capitol Investments | Bears Investment Company | 12/28/2005 | 3,500.00 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | 4,109.33 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | 4,262.67 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | 4,324.00 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | 4,385.33 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | 4,385.34 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | 4,600.00 |
| Capitol Investments | Bears Investment Company | 12/30/2005 | 4,600.00 |
| Capitol Investments | Bears Investment Company | 01/05/2006 | 3,500.00 |
| Capitol Investments | Bears Investment Company | 01/10/2006 | 2,000.00 |
| Capitol Investments | Bears Investment Company | 01/13/2006 | 3,500.00 |
| Capitol Investments | Bears Investment Company | 01/17/2006 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 01/17/2006 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 01/17/2006 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 01/17/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 01/17/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 01/17/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 01/17/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 01/20/2006 | 3,600.00 |
| Capitol Investments | Bears Investment Company | 01/23/2006 | 3,500.00 |

*Source: Debtor's Quickbooks accounting records*



**EXHIBIT L**

**FALSE PROFIT TRANSFERS**

| TRANSFEROR | TRANSFEREE | DATE OF TRANSFER | INTEREST PAID |
|---|---|---|---|
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 01/24/2006 | 3,600.00 |
| Capitol Investments | Bears Investment Company | 01/30/2006 | 3,500.00 |
| Capitol Investments | Bears Investment Company | 01/31/2006 | 3,600.00 |
| Capitol Investments | Bears Investment Company | 01/31/2006 | 4,109.33 |
| Capitol Investments | Bears Investment Company | 01/31/2006 | 4,262.67 |
| Capitol Investments | Bears Investment Company | 01/31/2006 | 4,324.00 |
| Capitol Investments | Bears Investment Company | 01/31/2006 | 4,385.33 |
| Capitol Investments | Bears Investment Company | 01/31/2006 | 4,385.33 |
| Capitol Investments | Bears Investment Company | 01/31/2006 | 4,600.00 |
| Capitol Investments | Bears Investment Company | 01/31/2006 | 4,600.01 |
| Capitol Investments | Bears Investment Company | 02/06/2006 | 3,500.00 |
| Capitol Investments | Bears Investment Company | 02/06/2006 | 3,600.00 |
| Capitol Investments | Bears Investment Company | 02/13/2006 | 3,500.00 |
| Capitol Investments | Bears Investment Company | 02/13/2006 | 3,600.00 |
| Capitol Investments | Bears Investment Company | 02/15/2006 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 02/15/2006 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 02/15/2006 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 02/15/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 02/15/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 02/15/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 02/15/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 02/28/2006 | 3,338.83 |
| Capitol Investments | Bears Investment Company | 02/28/2006 | 3,463.42 |
| Capitol Investments | Bears Investment Company | 02/28/2006 | 3,513.25 |
| Capitol Investments | Bears Investment Company | 02/28/2006 | 3,563.08 |
| Capitol Investments | Bears Investment Company | 02/28/2006 | 3,563.08 |
| Capitol Investments | Bears Investment Company | 02/28/2006 | 3,737.50 |
| Capitol Investments | Bears Investment Company | 02/28/2006 | 3,737.51 |
| Capitol Investments | Bears Investment Company | 02/28/2006 | 7,000.00 |
| Capitol Investments | Bears Investment Company | 03/07/2006 | 7,000.00 |
| Capitol Investments | Bears Investment Company | 03/14/2006 | 7,000.00 |

*Source: Debtor's Quickbooks accounting records*

**EXHIBIT L**

**FALSE PROFIT TRANSFERS**

| TRANSFEROR | TRANSFEREE | DATE OF TRANSFER | INTEREST PAID |
|---|---|---|---|
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 03/15/2006 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 03/15/2006 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 03/15/2006 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 03/15/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 03/15/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 03/15/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 03/15/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 03/21/2006 | 7,000.00 |
| Capitol Investments | Bears Investment Company | 03/29/2006 | 7,000.00 |
| Capitol Investments | Bears Investment Company | 03/31/2006 | 4,109.33 |
| Capitol Investments | Bears Investment Company | 03/31/2006 | 4,262.67 |
| Capitol Investments | Bears Investment Company | 03/31/2006 | 4,324.00 |
| Capitol Investments | Bears Investment Company | 03/31/2006 | 4,385.33 |
| Capitol Investments | Bears Investment Company | 03/31/2006 | 4,385.34 |
| Capitol Investments | Bears Investment Company | 03/31/2006 | 4,600.00 |
| Capitol Investments | Bears Investment Company | 03/31/2006 | 4,600.00 |
| Capitol Investments | Bears Investment Company | 04/06/2006 | 7,000.00 |
| Capitol Investments | Bears Investment Company | 04/12/2006 | 7,000.00 |
| Capitol Investments | Bears Investment Company | 04/14/2006 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 04/14/2006 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 04/14/2006 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 04/14/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 04/14/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 04/14/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 04/14/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 04/24/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 04/28/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 05/01/2006 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 05/01/2006 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 05/01/2006 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 05/01/2006 | 4,111.25 |

*Source: Debtor's Quickbooks accounting records*

**EXHIBIT L**

**FALSE PROFIT TRANSFERS**

| TRANSFEROR | TRANSFEREE | DATE OF TRANSFER | INTEREST PAID |
|---|---|---|---|
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 05/01/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 05/01/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 05/01/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 05/05/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 05/15/2006 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 05/15/2006 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 05/15/2006 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 05/15/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 05/15/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 05/15/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 05/15/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 05/15/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 05/22/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 05/30/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 05/31/2006 | 4,109.33 |
| Capitol Investments | Bears Investment Company | 05/31/2006 | 4,262.67 |
| Capitol Investments | Bears Investment Company | 05/31/2006 | 4,324.00 |
| Capitol Investments | Bears Investment Company | 05/31/2006 | 4,385.33 |
| Capitol Investments | Bears Investment Company | 05/31/2006 | 4,385.34 |
| Capitol Investments | Bears Investment Company | 05/31/2006 | 4,600.00 |
| Capitol Investments | Bears Investment Company | 05/31/2006 | 4,600.00 |
| Capitol Investments | Bears Investment Company | 06/02/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 06/12/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 06/15/2006 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 06/15/2006 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 06/15/2006 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 06/15/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 06/15/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 06/15/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 06/15/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 06/20/2006 | 5,000.00 |

*Source: Debtor's Quickbooks accounting records*

**EXHIBIT L**

**FALSE PROFIT TRANSFERS**

| TRANSFEROR | TRANSFEREE | DATE OF TRANSFER | INTEREST PAID |
|---|---|---|---|
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 06/27/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 07/03/2006 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 07/03/2006 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 07/03/2006 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 07/03/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 07/03/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 07/03/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 07/03/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 07/03/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 07/10/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 07/10/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 07/17/2006 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 07/17/2006 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 07/17/2006 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 07/17/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 07/17/2006 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 07/17/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 07/17/2006 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 07/17/2006 | 7,500.00 |
| Capitol Investments | Bears Investment Company | 07/24/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 07/27/2006 | 2,500.00 |
| Capitol Investments | Bears Investment Company | 07/31/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 08/01/2006 | 4,109.33 |
| Capitol Investments | Bears Investment Company | 08/01/2006 | 4,262.67 |
| Capitol Investments | Bears Investment Company | 08/01/2006 | 4,324.00 |
| Capitol Investments | Bears Investment Company | 08/01/2006 | 4,385.33 |
| Capitol Investments | Bears Investment Company | 08/01/2006 | 4,385.33 |
| Capitol Investments | Bears Investment Company | 08/01/2006 | 4,600.00 |
| Capitol Investments | Bears Investment Company | 08/01/2006 | 4,600.01 |
| Capitol Investments | Bears Investment Company | 08/07/2006 | 4,000.00 |
| Capitol Investments | Bears Investment Company | 08/07/2006 | 5,000.00 |

*Source: Debtor's Quickbooks accounting records*

**EXHIBIT L**

**FALSE PROFIT TRANSFERS**

| TRANSFEROR | TRANSFEREE | DATE OF TRANSFER | INTEREST PAID |
|---|---|---|---|
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,852.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 3,996.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,053.75 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,111.25 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 11/30/2005 | 4,312.50 |
| Capitol Investments | Bears Investment Company | 08/14/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 08/15/2006 | 28,650.00 |
| Capitol Investments | Bears Investment Company | 08/21/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 08/22/2006 | 3,200.00 |
| Capitol Investments | Bears Investment Company | 08/28/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 08/29/2006 | 30,666.67 |
| Capitol Investments | Bears Investment Company | 09/06/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 09/11/2006 | 5,000.00 |
| Capitol Investments | Bears Investment Company | 09/15/2006 | 28,750.00 |
| Capitol Investments | Bears Investment Company | 09/18/2006 | 5,000.00 |
| | | **TOTALS** | **$ 817,266.69** |

*Source: Debtor's Quickbooks accounting records*